UNITED STATES of America,
Plaintiff–Appellant,

v.

Michael Allen SPECK, Defendant–
Appellee.

No. 92–2616.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 18, 1993.

Decided May 11, 1993.

Daniel Tvedt, Asst. U.S. Atty., Cedar Rapids, IA, argued, for plaintiff-appellant.

E. Daniel O'Brien, Cedar Rapids, IA, argued, for defendant-appellee.

Before McMILLIAN, MAGILL, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

This appeal raises the question whether a defendant who insisted upon his factual innocence at trial and all the way through sentencing qualifies for the acceptance of responsibility reduction under U.S.S.G. § 3E1.1 because of his pretrial efforts at rehabilitation. The district court granted the reduction, and the government appeals. We reverse.

In early 1989, twenty-one year old Michael Allen Speck left home and moved in with drug dealer Francis Krier. In September 1991, after Krier's conviction, Speck was charged in a four-count indictment with aiding and abetting Krier's cocaine sales to a confidential informant in May and June of 1989, and with conspiracy to distribute cocaine. After a trial at which Krier implicated Speck in the controlled sales and Speck testified in his own defense, the jury convicted Speck on two of the cocaine distribution counts and the conspiracy count.

Speck's presentence report assigned a criminal history category of IV, based upon his seven other convictions between July 1988 and January 1990, plus the fact that he committed the instant offense while on probation. The PSR recommended a two-level reduction for Speck's minor role in the offense, but no reduction for acceptance of responsibility because:

The defendant does not appear to be clearly demonstrating a recognition and

affirmative acceptance of personal responsibility for his criminal conduct. Mr. Speck advised this officer he has never delivered drugs and is not guilty of the instant offense. He further stated that in his opinion, he received an unfair deal from the government. The Probation Office would add that Mr. Speck does not appear to meet any of the provisions listed in Application Note 1 of Guideline 3E1.1.

At sentencing, Speck urged an acceptance of responsibility reduction because he had voluntarily moved out of Krier's residence in July 1989 and had turned his life around in 1990 while serving a 180–day sentence at a halfway house for a January 1990 theft conviction. Speck submitted letters from his employer and two halfway house staff members attesting to his rehabilitative progress since early 1990. Over the government's objection, the district court granted the reduction, explaining that the letters of support

> clearly show that [Speck] had turned his head around and changed his life [between the drug offenses and indictment], and I think that's what acceptance of responsibility is all about.... [E]ven if you're found guilty, [that] doesn't mean you then got to cough up and say, "Okay, I was dumb to plead not guilty. I'm now going to tell you, Judge, so I can get two points, that I was guilty." I don't think you have to do that.

The court sentenced Speck to thirty months in prison, the bottom of his guidelines range, which made Speck eligible for the Bureau of Prisons "boot camp" program.

U.S.S.G. § 3E1.1 provides for a two-level reduction "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." [1] The Background commentary explains, "For several reasons, a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense and related conduct by taking, in a timely fashion, one or

more of the actions listed [in Application Note 1] (or some equivalent action) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility." Application Note 2 states that the reduction is usually available only to defendants who plead guilty:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt.... In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

*See United States v. Aldridge,* 985 F.2d 960, 962 (8th Cir.1992); *United States v. Peery,* 977 F.2d 1230, 1234 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1354, 122 L.Ed.2d 734 (1993).

■ In this case, Speck did more than "put the government to its burden of proof at trial." He testified at trial and proclaimed his innocence. Though he admitted living with Krier for a few months in 1989 and driving Krier wherever he wanted to go, Speck denied knowledge of any cocaine transactions, denied knowing Krier was a cocaine dealer, and denied ever seeing Krier cut or use cocaine. If the jury had believed this testimony, it would have acquitted Speck on all four counts. Yet even after his conviction, Speck continued to deny his guilt, first to the probation officer, and then in testifying at his sentencing hearing:

---

1. Section 3E1.1 was substantially revised effective November 1, 1992. *See* U.S.S.G.App. C, ¶ 459. This opinion will refer to the provisions in effect when Speck was convicted and sentenced. One of the recent changes was to include "post-offense rehabilitative efforts (*e.g.,* counseling or drug treatment)" in the list of actions that may evidence acceptance of responsibility. Comment. (n. 1(g)). We will give Speck the benefit of that change by assuming that it clarified prior law.

*Direct Examination.*

Q. But, in any event, you did know [Krier] was dealing in marijuana when you moved in?

A. Yeah.

Q. Did you know about cocaine?

A. No, nothing with cocaine whatsoever.

\* \* \* \* \* \*

Q. When you were driving Frannie Krier around to these places, what did you think he was doing, if you have a thought?

A. If anything, you know, he might have been getting marijuana. I really didn't ask him.... I would sit in the truck—or Jeep, or whatever, and he would go in and do his thing and be back out. That's the way it happened. I might have been turning my head a little to what was going on, but I had no idea he was going in there and getting cocaine.

\* \* \* \* \* \*

*Cross Examination.*

Q. You deny being around when Lloyd Michael Harry [the informant] and Frannie Krier would set up the transactions?

A. ... I was present in the house when they were both in there, but I wasn't present when they were making any conversation over cocaine.

\* \* \* \* \* \*

Q. You and Frannie Krier never cut the cocaine back at your house?

A. I never did it. Frannie might have, but I didn't.

\* \* \* \* \* \*

Q. Now, you knew that Frannie Krier was involved with cocaine, don't you?

A. I had no idea he was involved with cocaine, no.

\* \* \* \* \* \*

Q. Did you ever deliver drugs to Lynn Capps for Frannie Krier?

A. Never. I've never delivered drugs period. I've used marijuana, and cocaine once, but I've never ever made any deliveries of drugs....

Q. So all those late-night trips out to Gary Harry's house you never knew what was going on—

A. Wait a minute, that's another thing, you mean all those late-night trips.... You bring up these witnesses that seen me drive, which I already said I drove, I drove Frannie Krier out there. You made—spent the whole day [at trial] doing that, like it was 25 trips out there. It wasn't 25 trips. From what I know, it was three or four or maybe five trips out there, they weren't one right after another. This was over a few months, wasn't it? I mean, what's so suspicious about that?

\* \* \* \* \* \*

Q. And you deny Frannie Krier's statement that he talked about it with you every time?

A. Yeah, I deny that.

If a defendant's words are the appropriate measure, it is clear that Speck has never "demonstrate[d] a recognition and affirmative acceptance of personal responsibility for his criminal conduct." At trial and at sentencing, he did more than deny some of the details of the government's case against him—he consistently denied responsibility for the cocaine conspiracy and distribution crimes of which he was convicted.

■ A defendant's words, however, cannot be the entire measure of acceptance of responsibility; securing the reduction is not simply a matter of incanting the appropriate litany of remorse. The examples listed in Application Note 1 "emphasiz[e] deeds over words—external, verifiable; expiatory acts over self-serving, unverifiable reports of interior mental states." *United States v. Beserra,* 967 F.2d 254, 256 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 341 (1992). The district court properly focused upon Speck's pretrial deeds—long before his arrest for this crime, the district court found, Speck got his job back, reconciled with his mother whom he had previously assaulted, and convinced his employer and halfway house supervisors that he was well on the way to successful rehabilitation.

■ But given the plain language of § 3E1.1, the question remains whether Speck's rehabilitative conduct manifested acceptance of responsibility *for his offense of conviction.* This is the only situation in

which rehabilitation has been held relevant under § 3E1.1. *See United States v. Harrington,* 947 F.2d 956, 960 (D.C.Cir.1991). Otherwise, rehabilitation, while desirable, is only "[s]elf-improvement [that] is not the type of conduct contemplated by the acceptance of responsibility provisions of the guidelines." *United States v. Pharr,* 916 F.2d 129, 131 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991).

Speck's rehabilitation efforts began while he served a probationary sentence for a crime committed seven months after the cocaine transactions with Krier. During that probationary period, Speck twice tested positively for drug use. At sentencing, Speck insisted that he did not move out of Krier's residence to terminate criminal conduct or associations:

> I'd like to bring this up, too, and I left Frannie Krier's house right after I got my job back because I didn't enjoy staying with Frannie Krier. It wasn't because I knew Frannie Krier was going to get convicted of anything.

In these circumstances, Speck's own words and actions make it clear that his 1990 decision to end his lengthy crime spree did not manifest an acceptance of responsibility for the 1989 drug crimes at issue.[2] Although one could make a case for granting the reduction for any successful rehabilitative conduct, § 3E1.1 limits this reduction to one who accepts responsibility "for his criminal conduct." We have no authority to rewrite the guidelines, and the acceptance-of-responsibility reduction as conceived is clearly rational:

> A person who is conscious of having done wrong, and who feels genuine remorse for his wrong rather than indignation at being a victim of circumstances—of poverty or drink or a brutal upbringing or whatever else may have predisposed him to criminal

activity—is on the way to developing those internal checks that would keep many people from committing crimes even if the expected costs of criminal punishment were lower than they are.

*Beserra,* 967 F.2d at 256.

A defendant who maintains innocence, blames others, and expresses regret only for the consequences of criminal conduct does not accept responsibility within the meaning of § 3E1.1. *See United States v. Ransom,* 990 F.2d 1011 (8th Cir.1993); *United States v. Gibson,* 985 F.2d 860, 867 (6th Cir.1993); *United States v. Harriott,* 976 F.2d 198, 202 (4th Cir.1992); *United States v. Shores,* 966 F.2d 1383, 1388 (11th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 353, 121 L.Ed.2d 268; *United States v. Williams,* 940 F.2d 176, 182–83 (6th Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991). Speck put the government to its proof at trial and testified to his innocence. Since the trial, he has maintained his innocence and has continued to blame others for his prosecution and conviction. He has taken none of the actions listed in Application Note 1 as evidencing acceptance of responsibility. In these circumstances, we conclude that the district court's grant of an acceptance of responsibility reduction is without foundation.

The sentence of the district court is reversed and the case is remanded for resentencing.

---

2. Even Speck's explanation at the sentencing hearing of his decision to rehabilitate did not reflect acceptance of responsibility for his cocaine distribution crimes:

> Q. In any event, when you were in the halfway house, did you sit down and think about your life, where you had been leading?
> A. Yeah.
> Q. What did you think?

> A. I knew what I did. I knew I had made mistakes for 14 months, 15, 16, 17 months, whatever, a year and a half I was messing up. I knew what I did. It was totally crazy. I knew it was—I told my mom what I did, and I knew it was wrong and it's time to change. By that time I had my job back. When I went into the halfway house, I had gotten my job back.