# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2405WM

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Western District |
| | * | of Missouri. |
| Richard Andrew DeShon, also known | * | |
| as Andy DeShon, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 12, 1999

Filed: June 8, 1999

_____

Before RICHARD S. ARNOLD, BRIGHT, and WOLLMAN,[1] Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


Richard Andrew DeShon pleaded guilty to all four counts of an indictment alleging income-tax evasion, money laundering, and interstate transportation of property obtained by fraud. The Sentencing Guidelines indicated a range of 30 to 37 months' imprisonment. Before sentencing, Mr. DeShon filed a motion for a downward departure pursuant to U.S.S.G. § 5K2.0, which allows a District Court to impose a

_____

[1]Judge Wollman became Chief Judge on April 24, 1999.

sentence outside the range if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1994). The District Court[2] granted the motion after a hearing, and sentenced Mr. DeShon to five months' community confinement without work release, followed by two years of supervised release, which included a special condition of five months' home detention. The District Court also directed Mr. DeShon to cooperate with the Internal Revenue Service in determining, and paying, his tax liability, although neither restitution nor a fine was ordered. The United States appeals, arguing that the sole basis relied upon to support Mr. DeShon's claim of extraordinary post-offense rehabilitation was his proclaimed commitment to a Christian lifestyle, that the District Court failed to state sufficiently the reasons for the extent of the departure, and that the Court abused its discretion in departing downward. We affirm.

I.

Under the Sentencing Guidelines, post-offense rehabilitation is one of the ways a defendant may demonstrate acceptance of responsibility warranting a reduction of the defendant's offense level. See U.S.S.G. § 3E1.1 comment. application n.1(g). Because the acceptance-of-responsibility guideline already takes post-offense rehabilitation efforts into account, departure under § 5K2.0 is warranted only if the defendant's efforts are exceptional enough to be atypical of the cases in which the acceptance-of-responsibility reduction is usually granted. See United States v. Kapitzke, 130 F.3d 820, 823 (8th Cir. 1997); United States v. Sally, 116 F.3d 76, 80 (3d Cir. 1997); United States v. Brock, 108 F.3d 31, 35 (4th Cir. 1997).

---

[2]The Hon. Joseph E. Stevens, Jr., late a United States District Judge for the Western District of Missouri.

The evidence before the District Court was that Mr. DeShon, following the events that led to his conviction, made extraordinary efforts to change his life. In Mr. DeShon's motion for downward departure, his counsel wrote that Mr. DeShon, during the investigation, but a year before his indictment, "made a decision to radically alter his lifestyle," and that he "renewed his life in the church." Appellant's App. at 35. At the sentencing hearing, Dick DeShon, the defendant's father and one of the victims of the crime, testified that the defendant attends as many as four church services each week, and that, in some weeks, the defendant participates in counseling sessions at the church "virtually every day." Sentencing Tr. at 20. Dick DeShon also testified that his son "has not denied any of his actions to anyone in the community," that he "has admitted in his church and in his community that he has done something wrong," that "he knows there is another way of life," and that he "lives that life day-in and day-out." Tr. at 19. The defendant's mother testified that he "is not the same young man that he was," that he "reaches out and helps other people now," and that she believes the change in her son is "real" and is "going to last." Tr. at 23. In addition, Darcy McBride, the defendant's sister, in a letter quoted in the motion for downward departure, wrote that Mr. DeShon "has worked very hard to maintain and strengthen his family relationships in spite of the guilt and shame that is his burden now." Appellant's App. at 35-36.

Linda Saunders, Mr. DeShon's counselor and one of the pastors at the church he attends, also testified at the hearing. Her testimony was that Mr. DeShon "genuinely knows what he did was wrong." Tr. at 30. Ms. Saunders described Mr. DeShon's "hard work and diligence," and testified that she had "seen him after midnight cleaning off the parking lot." Tr. at 31-32. Cliff McFadden, Mr. DeShon's employer at the time of the hearing, described Mr. DeShon's work as a manual laborer, testifying that he had "tried very hard to catch up on his bills," sometimes working as many as 70 to 80 each week. Tr. at 39. Mr. McFadden testified that the defendant's "priorities in life had changed," and that he believed the change to be "honest and sincere." Tr. at 38, 40.

Finally, Nick Zych, a pretrial services officer, testified that Mr. DeShon had complied fully with all of the conditions of pretrial release. When asked by the Court whether Mr. DeShon had made "concrete gains toward . . . turning his life around," Mr. Zych said that he had. Tr. at 48. He testified that Mr. DeShon's post-offense efforts were "extraordinary," and that he "was accepting responsibility the first day I saw him." Tr. at 48-49. Further, Mr. Zych, drawing upon his experience as a state pretrial officer, testified that he "didn't see too many people that are willing to comply or somebody that is really a good person. And I think Mr. DeShon is an exception and he's somebody that will stand out in my mind . . .." Tr. at 48-49.

The District Court, finding that Mr. DeShon's "rehabilitation effort was present to such [an] exceptional degree [as] to render the case atypical of those envisioned in the guidelines," granted the motion for a downward departure. Tr. at 85. The Court noted that it was particularly interested in Mr. Zych's testimony, as well as Ms. Saunders's, "who described [Mr. DeShon] as 'one of the most genuine converts that I have ever had the privilege of discipling.' " Tr. at 85.

## II.

A defendant's religion, of course, may never be the basis for a District Court's departure from the Sentencing Guidelines. See U.S.S.G. § 5H1.10, p.s. (religion "not relevant in the determination of a sentence.") While the sentencing transcript contains religious references, we believe the government's view of the District Court's decision to depart downward is too narrow. As the government itself acknowledges, all of the witnesses who testified at the hearing agreed that Mr. DeShon's life has changed completely and that he is now a different person. The issue before the District Court was not Mr. DeShon's religion, nor what motivated his rehabilitation efforts. The issue was whether his rehabilitation was "exceptional enough to be atypical of cases in which the acceptance of responsibility reduction is usually granted." Kapitzke, 130 F.3d at 823 (citing Sally, 116 F.3d at 80).

-4-

On this question, the District Court has wide discretion. The commentary to the Sentencing Guidelines section on acceptance of responsibility provides that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 comment. application n.5. In addition, "[a] district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Koon v. United States, 518 U.S. 81, 98 (1996). The District Court was clearly persuaded by the testimony that the manner and conduct of Mr. DeShon's life had changed, and that his post-offense rehabilitation efforts were exceptional. While we might not have reached the same decision, or might not have departed downward as much as the District Court did, we see nothing to convince us that the Court abused its discretion in doing so. Religion is not the issue here. The question is a concrete change of life. It would be wrong to disregard this change simply because it was motivated by religion.

III.

The United States argues that the District Court erred in not justifying the extent of its departure decision. We disagree. A District Court is not required to explain, mechanically and in detail, why it rejected each offense level. One cannot read the entire transcript without concluding that the Court was persuaded by the testimony, and we believe the Court explained sufficiently its decision. See Tr. at 84-86. In addition, the Court noted, in an attachment to the judgment of conviction, that it believed the downward departure "was supported by the facts in the case as they . . . occurred and developed since the occurrence of the offense and the indictment and plea." Appellant's Add. at 7.

Accordingly, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.