# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1213
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Cassie Patterson, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 13, 2002

Filed: January 15, 2003
_____

Before BOWMAN, BRIGHT, and FAGG, Circuit Judges.
_____

BOWMAN, Circuit Judge.

We review this case for the second time. Previously, in United States v. Patterson, No. 01-1462, 2001 WL 969006, at *1 (8th Cir. Aug. 27, 2001) (unpublished), we held that the District Court erred in departing downward from the range prescribed by the Sentencing Guidelines, and we vacated the sentence of probation and remanded for resentencing. The government now appeals from the sentence of probation imposed by the District Court following our remand. We again vacate that sentence and remand for resentencing within the applicable guidelines sentencing range.

## I.

Cassie Patterson (Patterson) pled guilty to four counts of methamphetamine distribution, 21 U.S.C. § 841(a)(1) (2000). Patterson's plea of guilty arose from selling approximately one ounce of methamphetamine to a government informant in four controlled transactions. Patterson is a divorcee with two children from two prior marriages and a third child from an out-of-wedlock relationship. Patterson's children live with her at her mother's residence.

Under the guidelines, Patterson's base offense level was 20 and her criminal history category was III.[1] At her original sentencing on January 23, 2001, the District Court adopted the probation officer's recommendation to grant Patterson a three-level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)-(b). Patterson's resulting guideline range, with a base level offense of 17 and a criminal history category of III, was thirty to thirty-seven months. See U.S.S.G. ch. 5, pt. A (sentencing table). The District Court departed downward under § 5K2.0 from this range and sentenced Patterson to a term of five years of probation. In departing downward, the District Court relied on two discouraged factors (Patterson's family obligations and her health condition). On appeal, we vacated Patterson's sentence and held that the District Court abused its discretion in granting a downward departure by relying on these two discouraged sentencing factors. Patterson, 2001 WL 969006, at *2. We remanded the case for resentencing.

A few days before Patterson's resentencing, her counsel notified the District Court that Patterson's extraordinary post-offense rehabilitation warranted a departure from the applicable sentencing range. In support of this claim, Patterson called three

---

[1]The District Court sentenced Patterson under the November 1, 1999 edition of the United States Sentencing Guidelines (U.S.S.G.) manual. See U.S.S.G. Manual (1998) & Supp. (May 2000).

witnesses during the resentencing hearing. Jane McCullough, a long-time friend of Patterson's, testified "[Patterson] was home all the time after that. Took care – was with her kids constantly. Helped her mom, was around her family all the time. Helped her grandparents daily. She was just day and night a different person, was back to her old self." Resentencing Tr. at 7. Randy Teague, Patterson's uncle, testified that "[Patterson's] done a tremendous job since [the time of her arrest] of changing her life around." Resentencing Tr. at 10. Specifically, he noted that "[s]he's a very good mother now" and that she was very helpful to her grandparents on their family farm. Resentencing Tr. at 12. Finally, Brenda Weter, Patterson's mother, testified that Patterson had changed "[d]rastically" from the time of her arrest and that she had moved home and "really made an effort to change." Resentencing Tr. at 16. The government called Patterson's probation officer who testified that Patterson had tested positive for methamphetamine use in March 2001 (two months after her initial sentencing) and that she admitted to ingesting methamphetamine on three occasions that month. Resentencing Tr. at 21. The probation officer further testified that, as a result of these violations, Patterson completed a drug treatment program and that she had committed no other violations while she was under his supervision. Patterson did not engage in any counseling or drug treatment programs during the period from her arrest to her initial sentencing.

Based on this record, the District Court again departed downward under § 5K2.0 and imposed a sentence of five years of probation to reward Patterson for her post-offense rehabilitation efforts. Specifically, the District Court concluded, "I'm going to find that [Patterson] made a desperate attempt to rehabilitate herself, and I'm going to leave her on probation and let you all supervise her . . . I think she's made a desperate, desperate attempt to rehabilitate herself, and I admire her for it." Resentencing Tr. at 24. The District Court also noted that, in granting the departure, it only considered Patterson's conduct from arrest to the first sentencing.

II.

The government appeals Patterson's sentence on two grounds. First, the government argues that the District Court abused its discretion in granting a downward departure on the basis of her post-offense rehabilitation efforts. Second, the government contends the District Court violated Rule 32(c)(1) of the Federal Rules of Criminal Procedure by not adequately giving notice of its intent to depart downward.

"We review the district court's decision to grant a downward departure for an abuse of discretion." United States v. Hasan, 245 F.3d 682, 684 (8th Cir.) (en banc) (citations omitted), cert. denied, 122 S.Ct. 238 (2001). In most cases, a district court's decision to depart from the guidelines will be due substantial deference. United States v. Diaz-Diaz, 135 F.3d 572, 580 (8th Cir. 1998). However, a district court's authority to depart from the guidelines exists only in limited circumstances. United States v. Hendricks, 171 F.3d 1184, 1187 (8th Cir. 1999). As the Sentencing Guidelines state, a sentencing court may depart from the applicable guidelines when factors exist in a case "that have not been given adequate consideration by the Commission" or when, "in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive." U.S.S.G. § 5K2.0. "In the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." Id. at cmt. (citing 18 U.S.C. § 3553(b)).

This Court recognizes that a defendant's "postoffense rehabilitation," if atypical, may be an acceptable basis for departing from the otherwise applicable guidelines range. United States v. Kapitzke, 130 F.3d 820, 823 (8th Cir. 1997); see also United States v. Sims, 174 F.3d 911, 912 (8th Cir. 1999) ("We have held that a defendant's post-offense rehabilitative conduct–that is, conduct from arrest up to the

time of sentencing–can, if sufficiently atypical, furnish an appropriate basis for downward departure."). Nonetheless, "[b]ecause the acceptance-of-responsibility guideline already takes post-offense rehabilitation efforts into account, departure under § 52K.0 is warranted only if the defendant's efforts are exceptional enough to be atypical of the cases in which the acceptance-of -responsibility reduction is usually granted." United States v. DeShon, 183 F.3d 888, 889 (8th Cir. 1999) (citations omitted).

While a decision to depart on the basis of extraordinary post-offense rehabilitation is generally a "fact-based judgment call that falls within the district court's sentencing discretion," Kapitzke, 130 F.3d at 824, we will reverse that decision if it is unsupported by the record. See United States v. Allery, 175 F.3d 610, 614 (8th Cir. 1999) (holding that district court abused its discretion in granting downward departure for defendant's post-offense rehabilitation efforts where record showed defendant did nothing more than obey the law since his conviction). We find the record in this case is devoid of any facts that warrant a departure on this ground. Rather, we agree with the government that, at most, the evidence demonstrates Patterson did nothing more than lead a lawful life after her arrest. As in Allery, Patterson's activities during the eight months between her arrest and initial sentencing "are hardly different from those of thousands of other offenders and thus cannot serve to take [her] case out of the heartland of those to which [the] guidelines apply." Id. at 614.[2]

---

[2]The dissent argues that we have somehow usurped the role of the sentencing court by substituting our view of the record in this case. Nothing could be further from the truth. While we give substantial deference to a sentencing court when reviewing a downward departure decision, Diaz-Diaz, 135 F.3d at 580, we must also ensure that a district court, in the absence of atypical circumstances, sentences within the applicable guideline range. See U.S.S.G. § 5K2.0, cmt. Here, the District Court departed downward once again from a sentencing range of thirty to thirty-seven months and sentenced Patterson to a term of probation. In support of this departure, the dissent argues Patterson "did far more than simply obey the law; she completely

Moreover, in the cases where this Court has affirmed downward departures for post-offense rehabilitation, the rehabilitative efforts commenced *before* the defendants were subject to prosecution.  See United States v. Newlon, 212 F.3d 423, 424 (8th Cir. 2000) (prior to defendant's arrest on federal charges, defendant had, at his own request, entered a treatment program for his drug and alcohol addictions); DeShon, 183 F.3d at 889 (defendant engaged in extraordinary post-offense rehabilitation efforts and accepted responsibility for his criminal conduct "during the investigation, but a year before his indictment"); Kapitzke, 130 F.3d at 823 (defendant entered sex offender and chemical dependency treatment programs "voluntarily and before he was aware that federal charges would be filed against him."); see also United States v. Craven, 239 F.3d 91, 100 (1st Cir. 2001) (noting that "[t]he reason that timing matters in rehabilitation cases is that a defendant who decides independently to turn his life around likely deserves higher marks than one who undertakes rehabilitation mainly (or at least partially) to gain advantage in imminent criminal proceedings.") (citation

turned her life around." Post at 12.  The record only reflects that Patterson attempted to quit using drugs and made efforts at becoming an attentive mother and helpful member of her family following her arrest. We fail to see what is so atypical about this behavior.  As discussed above (and not addressed by the dissent), we have previously held that conduct of this nature is not sufficiently atypical to remove a case from the applicable guidelines sentencing range. See Allery, 175 F.3d at 614.  If we were to adopt the dissent's view, thousands of offenders would be entitled to downward departures for doing nothing more after becoming subject to prosecution and before sentencing than merely obeying the law and living as useful members of their families.  This could not possibly be what Congress intended when it  enacted the guidelines and permitted departures under § 5K2.0 only in unusual circumstances. The dissent's view of this case is undoubtedly shaped by long-held disdain for the Sentencing Guidelines, see, e.g., United States v. Chavez, 230 F.3d 1089, 1091-93 (8th Cir. 2000) (Bright, J., concurring), as well as by a heartfelt concern, which all of us fully share, for anyone struggling to break free from a drug habit or drug addiction. Little else could explain the dissent's refusal to acknowledge and accept the law of this Circuit on downward departures. Nothing in this decision deprives district courts of discretion to grant downward departures in sufficiently atypical cases. Despite the dissent's claims to the contrary, Patterson's case is simply not one of them.

omitted).  In this case, Patterson's rehabilitation efforts did not begin until *after* the police arrested her for distributing methamphetamine.  The dissent does not  address this critical point.

We also conclude, based on the record before us, that the District Court did not give adequate consideration to the fact that it had already awarded Patterson a three-level adjustment to her base offense level for acceptance of responsibility.  In most cases, post-offense rehabilitation is not a permissible ground for departure because it can be accounted for by an adjustment for acceptance of responsibility. See Kapitzke, 130 F.3d at 823; see also U.S.S.G. § 3E1.1 cmt. app. n.1(g) (listing "post-offense rehabilitative efforts (e.g., counseling or drug treatment)" as considerations in granting acceptance of responsibility adjustment).  Here, the District Court offered no explanation why Patterson's post-offense conduct of becoming an attentive mother and helping her grandparents – even if relevant – together with whatever pre-initial-sentencing efforts she may have made to quit using illegal drugs were not accounted for by the three-level adjustment for acceptance of responsibility.  Similarly, the dissent is unable to offer any rationale or precedent for departing from the rule enunciated in Kapitzke.  The record  reflects that Patterson participated in a drug treatment program, but only after her initial sentencing.  Patterson's probation officer required her to participate in this program because she had violated the terms of the probation imposed at her initial sentencing by continuing to use methamphetamine.  Though we grant that drug addiction is usually not easily overcome, the probation violation strongly suggests that Patterson had not truly reformed herself in an extraordinary way by the time of her initial sentencing.[3]  Cf. Craven, 239 F.3d at 100 (noting defendant's conduct while in pretrial detention "casts significant doubt over the advisability of a downward departure" for post-offense rehabilitation).

---

[3]We note Patterson's probation violation squarely refutes the dissent's claim that, "Neither the AUSA nor the majority can point to any evidence that rebuts the fact that after her arrest Patterson reformed her life." Post at 12.

In light of the fact that we previously remanded this case for resentencing, we also have some concerns that the sentence imposed by the District Court was due perhaps more to its sympathy for Patterson than to any evidence of her extraordinary rehabilitation efforts prior to her initial sentencing. Congress, through the United States Sentencing Commission, designed the sentencing guidelines to reduce disparities of this very nature. See Koon v. United States, 518 U.S. 81, 92 (1996) (noting Congress created the United States Sentencing Commission and charged it with developing sentencing guidelines to eliminate disparities in sentences for "offenders with similar histories, convicted of similar crimes, committed under similar circumstances.") (internal citation omitted).

Finally, we believe it is necessary for us to note our concern about the dissent's attempt to impugn the motives of the government in bringing this appeal. Put in its proper context, the colloquy between the District Court and the Assistant United States Attorney during the resentencing hearing, quoted by the dissent, post at 13, shows the District Court was not pleased that the government had signaled its intent to appeal Patterson's sentence of probation. Without any apparent evidentiary basis, the District Court went on to attack the government's motives. As this Court's decision demonstrates, the government was on solid ground in believing that the facts of this case and the law of this Circuit did not support the downward departure from the Guidelines sentencing range to probation.

For the reasons stated, we find the District Court abused its discretion in departing downward on the basis of Patterson's post-offense rehabilitation efforts. We vacate the sentence of probation and remand this case to the District Court for resentencing within the applicable Guidelines range of thirty to thirty-seven months.[4]

---

[4]Our disposition of this case makes it unnecessary for us to reach the issue of whether the District Court erred as a matter of law by failing to provide sufficient notice to the government concerning its intended reason for departure.

BRIGHT, Circuit Judge, dissenting.

It is said that a judge writes a dissent when the sense of outrage exceeds his feelings of inertia. Here I dissent with strong feelings as I harbor little doubt that the majority is clearly wrong on both the law and the facts. The panel has sided with the position of an Assistant United States Attorney (AUSA) who has not provided any evidence in support of his contentions. The arguments advanced by the AUSA are specious and suspect. The majority accepts these arguments despite the presence of a record upon which we should routinely affirm the district court, and case law that limits the ability of appellate judges to substitute their views for those of a better-situated district judge.

On January 23, 2001, the district court held the first sentencing hearing. Patterson's counsel made an oral motion for departure based on three contentions: (1) Patterson's category III criminal history score overstated the seriousness of her criminal record;[5] (2) Patterson had recently been diagnosed with a heart condition, congestive heart failure, that required a doctor's continuing care, medication, and a strict diet; and (3) Patterson had extraordinary family ties and a very young infant for whom she was the sole caretaker. The trial court granted a departure based on Patterson's serious medical condition and her having a very young child.

This circuit reversed in an unpublished opinion. At the second sentencing hearing on January 7, 2002, the trial court allowed Patterson to present evidence of her post-offense rehabilitation as a possible ground for departure. Patterson called three witnesses. The government called a probation officer who handled Patterson's case after the first sentencing.

---

[5]Her criminal history is category III because she had one point for careless driving; one point for possession of drugs and when they caught her on the instant drug distribution, she was serving a sentence of probation for possession of drug paraphernalia. The sentencing court did not address this issue.

The majority opinion outlines the unrefuted testimony of three character witnesses who took the stand on Patterson's behalf. After listening to these witnesses, considering the totality of the circumstances, and assessing Patterson's efforts to rehabilitate herself, the trial court found that her efforts were sufficiently extraordinary to warrant a downward departure to probation.

The majority contends that the district court abused its discretion in finding that Patterson's behavior constituted extraordinary post-offense rehabilitation. Rather than deferring to the finder of fact, the majority substitutes its own view of the facts and finds "the record in this case is devoid of any facts" that support departure. This determination comes a mere four paragraphs after the majority's recitation of testimony from Patterson's three character witnesses. The majority is simply adopting the government's argument that Patterson did "nothing more than lead a lawful life after her arrest."

This type of determination is precisely the sort that should be left to the sound discretion of the district court. As the Supreme Court recognized in <u>Koon v. United States</u>, 518 U.S. 81, 98 (1996), "A district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." <u>Koon</u> laid out the proper role for the sentencing court in resolving whether departure is warranted by the facts of an individual case:

> To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over

-10-

appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

Id.

Under the law of this circuit, because the acceptance-of-responsibility guideline takes post-offense rehabilitation efforts into account, departure under § 5K2.0 is warranted only if the defendant's efforts are exceptional enough to be atypical of the cases in which the acceptance-of-responsibility reduction is usually granted. United States v. DeShon, 183 F.3d 888, 889 (8th Cir. 1999) (citing United States v. Kapitzke, 130 F.3d 820, 823 (8th Cir. 1997)). The defendant's conduct from arrest up to the time of the sentencing can, if sufficiently atypical, furnish an appropriate basis for downward departure. United States v. Sims, 174 F.3d 911, 912 (8th Cir. 1999). The district court in this case considered Patterson's rehabilitative efforts during the eight-month period between her arrest and initial sentencing.[6]  Having reviewed those

_____

[6]The government introduced evidence of Patterson's relapse with drugs while on probation after the first sentencing. The defense objected to consideration of this evidence unless the court also considered positive evidence of Patterson's rehabilitative efforts post-sentencing. According to the probation officer, after her positive urinalysis, Patterson willingly participated in and followed through with a treatment program.

The district court properly limited its review to the eight-month period between Patterson's arrest and her first sentencing. United States v. Sims, 174 F.3d 911, 913 (8th Cir. 1999) (post-sentencing rehabilitative conduct is not an appropriate basis for downward departure at a resentencing). Furthermore, the district court did consider Patterson's relapse with drugs, but found sufficient basis to depart anyway because Patterson appears to be overcoming her drug problem. The court directly asked the probation officer if he "[knew] how hard it is to get off drugs. You've seen a lot of it, haven't you?" (Tr. 1/7/02 at 23). This reflects the common understanding, acknowledged by the majority, that drug addiction is not easily overcome.

efforts, the court made a clear finding that Patterson's conduct was highly atypical, and warranted departure.

In reviewing a downward departure, the majority seems to have lost sight of the fact that "we are dealing with a fact-based judgment call that falls within the district court's sentencing discretion, and we are not permitted to substitute our judgment for that of the sentencing courts." Kapitzke, 130 F.3d at 824 (citing Koon).

The district court heard testimony from three witnesses about Patterson's tremendous efforts at self-improvement, her return to an active participant in her children's lives, her role in caring for family members, and her efforts to overcome drug addiction. The court also had before it the Presentence Report, which indicates that Patterson was married at age thirteen and had one child, she was married again at age eighteen and had another child. Despite having at least one child, Patterson graduated from high school with a 3.86 GPA in May 1990. In the view of the district court, a view to which we owe due deference, Patterson did far more than simply obey the law; she completely turned her life around. It is possible to obey the law without having a positive impact on the lives of others, contributing to society, and reforming one's life.

This case should be treated like the cases of United States v. Newlon, 212 F.3d 423 (8th Cir. 2000), and DeShon, where the district court's decision to depart for extraordinary post-offense rehabilitation was affirmed by the Eighth Circuit. In both those cases, the panels stated essentially: we might not have reached the same decision, but we see nothing to convince us that the district court abused its discretion. 212 F.3d at 424; 183 F.3d at 891.

Neither the AUSA nor the majority can point to any evidence that rebuts the fact that after her arrest Patterson reformed her life. Indeed, the government's brief concedes that she became an attentive mother and aided her own mother and

-12-

grandparents with chores. These post-offense rehabilitative efforts may be no big deal in the eyes of the AUSA, but the district court had a different view, and we do grievous error to the law when we adopt the views of an extremely adversarial litigant over the position of an able district judge.

The AUSA's arguments, unsupported by facts or dispositive law, are an unworthy basis for reversal. They may well spring from improper motives. Just after the district court imposed the sentence for a second time and the government announced that it would likely appeal the sentence again, the court made these statements:

> THE COURT: Well, let me tell you something. You've got your job, I've got my job. But I want to tell you something. I think the Government is making a horrendous mistake in this thing, and I think it's -- I think it's really vindictive, and I --
> [AUSA]: Your Honor, --
> THE COURT: -- think your reason is vindictive is because she was a cooperating witness, wasn't she? Didn't she cooperate?
> [AUSA]: She had attempted to.
> THE COURT: Yeah.
> [AUSA]: And what she is charged with are offenses when she was selling drugs while she was --
> THE COURT: I know.
> [AUSA]: -- trying to be --
> THE COURT: And so you all are hacked off at her because you couldn't use her as a witness.
> [AUSA]: Your Honor, --
> THE COURT: You know what, let me tell you something.
> [AUSA]: Your Honor, I don't believe --
> THE COURT: You know something?
> [AUSA]: -- there's any evidence, any evidence, to that effect.
> THE COURT: Well, it's -- I know -- you know, it just -- I think it's -- I just -- you know, well, I've said what I'm going to say. I just think --

here, put that in the file. I just think it's an outrage that the Government would act this way about this case. Well, let's see.

(Tr. 1/7/02 at 25-26).

Thus, contrary to fact and law, the majority now orders that this defendant be imprisoned. Who suffers? Obviously, Ms. Patterson, but also her children, her mother, her grandparents, and the public, will bear the cost of imprisoning her and perhaps her minor children when she could be caring for her family and continuing her efforts to become a contributing member of our society.

Ordering a prison term for this defendant makes no sense whatsoever. It flies in the face of reason, logic, and the law to successfully argue that it may not be extraordinary for a person addicted to drugs to confront that addiction and halt destructive and harmful behavior patterns and change one's life so as to play a positive role in her family's life. That sort of argument was made by the AUSA and unfortunately accepted as truth in this case by the majority.[7]

---

[7]I respond briefly to notes 2 and 3 of the opinion of my distinguished colleagues on the majority.

The issue is not whether judges like or dislike the guidelines as a method of imposing a prison sentence. As appellate judges we are obligated to affirm or reverse a district court regardless of personal views, see, e.g., United States v. Chavez, 230 F.3d 1091-93 (8th Cir. 2000) (Bright, J. concurring), the case cited by the majority in footnote 2.

The guidelines do not completely remove judicial discretion. As the Guideline Manual advises

The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one

-14-

to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

1995 U.S.S.G., Ch.1, Pt.A, intro. comment. 4(b)(quoted and approved in <u>Koon v. United States</u>, 518 U.S. 81, 92 (1996)).

Articles written after the adoption of the guidelines and commenting on them have observed that the sentencing judge retains "significant discretion." <u>See</u> Honorable Gerald Bard Tjoflat, *The Untapped Potential for Judicial Discretion Under the Federal Sentencing Guidelines: Advice for Counsel*, Fed. Probation, Dec. 1991, at 4; and Honorable Edward R. Becker, *Flexibility and Discretion Available to the Sentencing Judge Under the Guidelines Regime*, Fed. Probation, Dec. 1991, at 10. The view of the authors of those articles is that some judicial discretion remains and should be exercised by judges under the guidelines system. These views are important as these judges were members of the Probation Committee of the Judicial Conference of the United States during the consideration and adoption of the guidelines and Judge Tjoflat, as chairman of the committee, testified and advised Congress on the proposals. Judge Becker also later served as chairman of the Judicial Conference Committee on Criminal Law and Probation Administration and is considered an authority in the area of sentencing.

The record here is of extreme importance. That record can be read in only one light. This woman indeed turned her life around between arrest and sentence. Contrary to the surmise of the majority, that does not often happen to those caught up in drug addiction.

Thus, the sentencing judge could and did treat the matter as an atypical case. The prosecutor offered no evidence- -only an argument that every arrestee should and can turn his or her life around. The majority has deferred to this argument. With all due respect, I believe this argument is without support in the record.

I add one additional comment about proper application of the guidelines. Recently (December 2002), the United States Sentencing Commission published a "Summary Report" on a survey of Article III judges. This summary is a component of the fifteen-year report on the United States Sentencing Commission's legislative

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

mandate.  I quote from that report:

**Areas of Least Effectiveness in Meeting the Sentencing Goals**

A plurality of both responding district and circuit court judges indicated that there were two areas in which the guidelines were less effective in achieving the purposes of sentencing:

– providing defendants with training, medical care, or treatment in the most effective manner, where rehabilitation was appropriate (Q5) and

– maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors (Q9).

Approximately 40 percent of responding district court judges, and slightly more responding circuit court judges, reported that few of their cases met these sentencing goals.

United States Sentencing Commission, Summary Report at 2 (Dec. 2002).

The district court used discretion in granting probation.  This was just and proper and supported by the facts and the law.  The district judge should be affirmed.