# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1490

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Craig Ramon Chapman, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 21, 2003

Filed: January 21, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and MURPHY, Circuit
Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury convicted Craig Chapman of conspiring to distribute marijuana, and the district court sentenced him to imprisonment for 41 months. For the reasons stated below, we affirm his conviction but remand to the district court for resentencing and for correction of a clerical error in the judgment.

## I.

This case arises out of Mr. Chapman's participation in a marijuana distribution conspiracy with his brother, James Chapman (James), and at least one other individual, Francisco Barron. During a routine traffic stop, a Colorado state trooper found four duffel bags containing 191 pounds of marijuana in Mr. Barron's trunk. Mr. Barron told the officers and later Drug Enforcement Agency (DEA) agents that he had, on several occasions, transported marijuana for "Arturo" from Arizona to Minneapolis. Once at his destination, Mr. Barron said that he would rent a local motel room and contact the buyer, Mr. Chapman, to arrange for pick-up and payment. Mr. Barron agreed to cooperate in a controlled delivery, and DEA agents accompanied him to meet his buyer in Minnesota where the focus of the investigation shifted to Mr. Chapman and his brother. Mr. Chapman, James, and Mr. Barron were indicted together. At the time that Mr. Chapman and his brother were jointly tried, Mr. Barron was a fugitive. The jury convicted both Mr. Chapman and James of the charges against them.

## II.

We note, first, that Mr. Chapman raises arguments concerning a jury instruction, the chain of custody of certain evidence, and the amount of marijuana attributed to him for sentencing purposes, all of which we have already addressed on his brother's appeal. *See United States v. Chapman*, 345 F.3d 630, 636-37 (8th Cir. 2003). We reject these arguments for the reasons given in our previous opinion.

## III.

At trial, the district court, over the objections of both Chapman brothers, allowed DEA Special Agent Kyle Scheer to testify to Mr. Barron's out-of-court statements made between the time of the traffic stop and the controlled delivery. Mr. Chapman asserts that the admission of these statements violated his sixth amendment right to confront witnesses against him.

The government argues that because Mr. Chapman's name was redacted from the statements and replaced with the more generic words "person" and "buyer," his constitutional rights were protected. In the appeal concerning James's conviction, *see Chapman*, 345 F.3d at 636, however, we noted that the redacted statements did not harm James because "the jury could only have understood Mr. Barron's statements about a 'buyer' as referring to Craig." Thus, we will treat Mr. Barron's statements as if they were not redacted.

Although Mr. Barron was unavailable as a witness, the admission of his statements violated the confrontation clause unless the statements showed sufficient "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980). Hearsay statements exhibit adequate indicia of reliability if they " 'fall[] within a firmly rooted hearsay exception' or ... contain[] 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999) (plurality opinion) (quoting *Roberts*, 448 U.S. at 66); *United States v. Papajohn*, 212 F.3d 1112, 1119 (8th Cir. 2000).

In James's appeal, we held that Mr. Barron's statements did not fall under the hearsay exception for statements against penal interest. *See Chapman*, 345 F.3d at 632-33. Looking at the statements themselves and ignoring the other evidence presented at trial, moreover, there is no indication that Mr. Barron's statements were trustworthy or believable enough to warrant their admission despite the fact that they came within no hearsay exception. *See United States v. Beal*, 279 F.3d 567, 571 (8th Cir. 2002); *see also*, *Chapman*, 345 F.3d at 634-35. Without other particularized guarantees of trustworthiness, the introduction of the statements violated Mr. Chapman's sixth amendment right to confront witnesses against him.

Although the statements were admitted in error, we will reverse only if the error was not harmless. "[C]onfrontation right violations are subject to the ...

harmless error test found in *Chapman v. California*, 386 U.S. 18, [24] (1967), which requires that the error be harmless beyond a reasonable doubt." *United States v. Copley*, 938 F.2d 107, 110 (8th Cir. 1991). "Under *Chapman [v. California]*, 386 U.S. at 24, an error is harmless only if there could be no reasonable doubt that the error's admission failed to contribute to the jury's verdict." *Reed v. Thalacker*, 198 F.3d 1058, 1062 (8th Cir. 1999).

The government's case against Mr. Chapman was extremely strong. Law enforcement officers testified that when they searched Mr. Barron, they found business cards with several of Mr. Chapman's phone numbers handwritten and printed on them. These cards suggested that Mr. Barron and Mr. Chapman knew each other. DEA Special Agent Tammie Key testified that, on three occasions, she dialed the numbers on the cards for Mr. Barron so that he could make arrangements with Mr. Chapman to meet him for the delivery. At trial tapes of these phone conversations were played for the jury, and Agent Key, who had spoken with Mr. Chapman during and after his arrest, identified him as the other party to the recorded conversations.

Before the controlled delivery, Deputy Dana Nelson saw Mr. Chapman visit his brother's home to get a box that Mr. Chapman placed in his trunk before meeting Mr. Barron. Mr. Chapman was positively identified by police as the man who met Mr. Barron at the motel during the controlled delivery. Another deputy testified that he found more than $31,000 in the trunk of Mr. Chapman's car in the motel parking lot following Mr. Chapman's arrest.

Deputy Nelson also testified that, during the search of Mr. Chapman's home, the police found a piece of paper with Arturo's name and Arizona phone number on it and another piece of paper with Mr. Barron's wife's first name and Mexican phone number on it. These papers were found in the bedroom where police also found bills addressed to Mr. Chapman. In the same bedroom, the police found a yellow jacket

-4-

with $1064 in the pocket, a file box containing marijuana, a scale, an empty sandwich bag box, and $300; in the basement, they discovered marijuana residue inside a Coleman cooler.

After examining the whole record, we conclude that Mr. Barron's statements were superfluous and did not contribute to the jury's verdict and thus their admission was harmless beyond a reasonable doubt. *Cf. Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

IV.

We also reject Mr. Chapman's claim that the evidence was insufficient to support the jury's verdict. We review the sufficiency of the evidence to sustain a conviction *de novo*. *United States v. Fitz*, 317 F.3d 878, 881 (8th Cir. 2003). "On a challenge to the sufficiency of the evidence supporting a criminal conviction we must view the evidence 'in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict.' " *United States v. Abfalter*, 340 F.3d 646, 654-55 (8th Cir. 2003) (quoting *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992), *cert. denied*, 505 U.S. 1211 (1992)). We have already rehearsed much of the evidence against Mr. Chapman. The evidence, ignoring the improperly admitted hearsay, was more than ample to support a verdict beyond a reasonable doubt.

V.

Mr. Chapman asserts that the district court erred when it denied him a downward departure under the United States Sentencing Guidelines based on his post-offense rehabilitation. Generally, denials of downward departures are unreviewable. *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000) (per curiam). If the sentencing court denied the departure because it believed that it had

no authority to depart from the sentencing guidelines, however, we will determine on appeal whether the sentencing court's belief was correct. *See United States v. Rice*, 332 F.3d 538, 539-40 (8th Cir. 2003).

While noting that Mr. Chapman's post-offense rehabilitation was "exceptional," the district court stated that it did not believe that it could grant Mr. Chapman's motion because he had held the government to its burden at trial and did not otherwise accept responsibility for his crime. We hold, to the contrary, that truly exceptional rehabilitation alone can, in rare cases, support a downward departure even when the defendant does not accept responsibility.

Two provisions of the sentencing guidelines involve post-offense, pre-sentencing rehabilitation: U.S.S.G. § 3E1.1 (2002) (allowing a reduction in offense level for acceptance of responsibility) and U.S.S.G. § 5K2.0 (2002)[1] (policy statement) (providing for a departure in cases "outside the heartland" of the guidelines, *see Koon v. United States*, 518 U.S. 81, 98 (1996)). The commentary to § 3E1.1 lists a number of considerations, including post-offense rehabilitation, that a district court may take into account when determining whether a defendant has accepted responsibility. *See* U.S.S.G. § 3E1.1 comment. (n.1) (2002). In practice, however, holding the government to its burden of proving the defendant's factual

---

[1]All references in this opinion are to the 2002 version of the guidelines, which were in effect at the time that Mr. Chapman was sentenced. We note that § 5K2.0 "was substantially revised, effective October 26, 2003," *see* U.S.S.G. § 5K2.0 (2003) (policy statement) comment, and that the revisions included provisions which prohibit downward departures for acceptance of responsibility, § 5K2.0(d)(2), require that departures for post offense rehabilitation occur only "in the exceptional case," § 5K2.0(a)(2)(B), and place limitations on departures based on multiple circumstances, § 5K2.0(c)(1)(2) (applicable if post offense rehabilitation were to be relied on in combination with any other circumstance).

guilt presents a near absolute bar to a defendant receiving a reduction under this section. *See* U.S.S.G. § 3E1.1 comment. (n.2) (2002); Hutchison, et. al., *Federal Sentencing Law and Practice* § 3E1.1, author's cmt. 5 (2002); *see also United States v. Speck*, 992 F.2d 860, 863 (8th Cir. 1993). For example, when a district court awarded a reduction in the offense level for acceptance of responsibility based solely on post-offense rehabilitation, we reversed, holding that under § 3E1.1, a defendant must do more than pursue self-improvement; he must accept responsibility for his offense in some way. *See Speck*, 992 F.2d at 862-63. It is abundantly clear in Mr. Chapman's case that he cannot qualify for this reduction regardless of how exceptional his post-offense rehabilitation was: He held the government to its burden and did not admit his guilt in any way to his family, his friends, his church, or the authorities.

Post-offense rehabilitation can also support a downward departure under § 5K2.0. *See United States v. Swick*, 334 F.3d 784, 789 (8th Cir. 2003). This section allows a district court to "impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission.' " U.S.S.G. §5K2.0 (2002) (quoting 18 U.S.C. § 3553(b)). Because § 3E1.1 already takes account of post-offense rehabilitation, "departure under §5K2.0 is warranted only if the defendants efforts are exceptional enough to be atypical." *United States v. DeShon*, 183 F.3d 888, 889 (8th Cir. 1999); *see Koon*, 518 U.S. at 96. Section 5K2.0 permits departures only in cases that fall "outside the heartland" of the guidelines. *See Koon*, 518 U.S. at 98. Our cases demonstrate that, at minimum, post-offense rehabilitation must be atypical. *See e.g.*, *United States v. Allery*, 175 F.3d 610, 614 (8th Cir. 1999). Where post-offense rehabilitation efforts were not atypical, we have reversed downward departures. *See, e.g.*, *Swick*, 334 F.3d at 789-90; *United States v. Patterson*, 315 F.3d 1044, 1048-49 (8th Cir. 2003). In cases where we have affirmed downward departures for post-offense rehabilitation,

however, we have noted that in addition to exceptional rehabilitation, defendants have accepted responsibility (and also received the § 3E1.1 reduction) and begun rehabilitation before arrest. *See, e.g., United States v. Newlon*, 212 F.3d 423, 424 (8th Cir. 2000); *DeShon*, 183 F.3d at 889-90 (8th Cir. 1999). While atypicality is certainly required for a § 5K2.0 departure, we have not addressed directly the significance of a defendant's acceptance of responsibility and the timing of rehabilitation.

We hold today that atypical post-offense rehabilitation can by itself be the basis for a departure under § 5K2.0. *Cf. Patterson*, 315 F.3d at 1048-49; *United States v. Roberts*, 313 F.3d 1050, 1054 (8th Cir. 2002). Atypical post-offense rehabilitation does not necessarily require that a defendant accept responsibility or that a defendant begin rehabilitative efforts before arrest. These facts, instead, are relevant to determining the genuineness of the defendant's rehabilitation. For example, a defendant admitting his wrongdoing to his family and friends is evidence that a district court could take into consideration when determining if a defendant's post-offense rehabilitation is genuine and extraordinary as required for a § 5K2.0 departure. *See DeShon*, 183 F.3d at 889. The absence of an acceptance of responsibility, on the other hand, does not necessarily preclude a departure under § 5K2.0; it will simply make it more difficult for a defendant to prove that his rehabilitation is genuine and atypical. *Cf. United States v. Kapitzke*, 130 F.3d 820, 823 (8th Cir. 1997). Likewise, pre-arrest rehabilitative efforts may better demonstrate a defendant's sincere desire to change his or her life than post-arrest efforts that may be tainted by a motive to appear reformed. In the end, however, only the atypicality of a defendant's post-offense rehabilitation determines whether a § 5K2.0 downward departure is appropriate. Information such as whether the defendant has accepted responsibility or the timing of the commencement of rehabilitative efforts serves only to determine the atypicality *vel non* of the defendant's behavior.

Since we hold that the timing of a defendant's pre-sentencing rehabilitative efforts and his failure to be accountable for his crime do not necessarily preclude a § 5K2.0 downward departure for extraordinary post-offense rehabilitation, we remand Mr. Chapman's case to the district court for resentencing. On remand, the district court should assess whether Mr. Chapman's post-offense rehabilitative efforts were truly extraordinary.

## VI.

Lastly, Mr. Chapman asserts that the judgment and commitment order mistakenly refer to 21 U.S.C. § 841(b)(1)(C) rather than 21 U.S.C. § 841(b)(1)(D) as the applicable penalty provision. The government agrees. Upon remand, the district court should correct these mistakes. *See* Fed. R. Crim. P. 36.

## VII.

For the reasons stated above, we affirm Mr. Chapman's convictions, but we remand so that the district court may reconsider Mr. Chapman's request for a downward departure based on his post-offense rehabilitation and correct a clerical error in the judgment and commitment order.

_____