UNITED STATES of America, Appellee,

v.

**Nolan McCOY, Appellant.**

No. 95–3353.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1996.

Decided June 13, 1996.

Richard Hughes, N. Little Rock, AR, argued for appellant.

Kevin T. Alexander, Little Rock, AR, argued for appellee.

Before MORRIS SHEPPARD ARNOLD, HEANEY, and HENLEY, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Nolan McCoy was convicted of conspiracy to distribute cocaine. He appeals his conviction, arguing that the evidence was insufficient to show his participation in a conspiracy and that the trial court improperly refused to give three jury instructions that he proffered. We affirm the judgment of the trial court.[1]

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

## I.

■ An undercover police officer posing as a drug dealer testified that Mr. McCoy paged him. When he called Mr. McCoy back, Mr. McCoy said that he "had found a person who would sell [the undercover officer] a quarter kilo of cocaine." A second police officer testified that in a statement after arrest, Mr. McCoy acknowledged that he had told the undercover officer that he "could hook him up with a quarter kilo of cocaine." .

According to the undercover officer's testimony, he and Mr. McCoy met by agreement at Mr. McCoy's house, where Mr. McCoy said that they "would have to go over to [the seller's] house." The undercover officer asked Mr. McCoy "to help negotiate the price of the quarter kilogram," and Mr. McCoy responded that he "was familiar with the prices of cocaine . . . and that he would help [the undercover officer] out."

The undercover officer further testified that he drove, with Mr. McCoy as a passenger, to a second house. There Mr. McCoy introduced the undercover officer to Raymond Latimer, stating that the undercover officer was "the man that wanted to buy the quarter kilogram of cocaine." Raymond Latimer suggested $8,500 as the price, and the undercover officer "asked [Mr. McCoy], I said, 'Well, that seems like a pretty good price,' [Mr. McCoy] said, 'Yeah, that is a good price for a quarter kilogram of cocaine,' and that is what we agreed on." The undercover officer also stated, twice, that Mr. McCoy, Raymond Latimer, and he "all negotiated the price."

The undercover officer then testified that he and Mr. McCoy left Raymond Latimer's house. A few hours later, the undercover officer returned to Mr. McCoy's house. At that time, Mr. McCoy introduced the undercover officer to Brad Latimer (Raymond Latimer's cousin) and reintroduced him to Raymond Latimer. After telling the undercover officer to stay at Mr. McCoy's house with Mr. McCoy, Raymond Latimer left with his cousin, saying that they "were going to get the man with the dope." While the Latimers were gone, the undercover officer told Mr. McCoy that "I didn't bring any scales and that there was no way I would know the exact weight of the dope." In response, Mr. McCoy "started fixing his triple beam scales up so that when the dope got there, it would be set to measure out the quarter kilogram." The undercover officer testified that such scales are used, in his experience, to "weigh up narcotics."

According to the undercover officer's testimony, the Latimers returned alone, conveying the drug supplier's reluctance to "do a deal" at Mr. McCoy's house. After subsequent discussions between the undercover officer and the Latimers, the undercover officer drove to a restaurant parking lot to receive the cocaine; Mr. McCoy and the Latimers rode with him. The undercover officer testified that he had told Mr. McCoy that he would give Mr. McCoy "a cut of the money" (although the reference is not completely clear, we assume that the undercover officer's intention was to refer to money that he would allegedly receive in reselling the cocaine). In the restaurant parking lot, a person from a second car showed the undercover officer a baggie filled with cocaine. Mr. McCoy, the Latimers, and all three of the people from the second car were then arrested.

Mr. McCoy argues that, even construing that evidence in the light most favorable to the government, *see, e.g., United States v. Jenkins,* 78 F.3d 1283, 1287 (8th Cir.1996), the proof was insufficient to establish beyond a reasonable doubt that there was an agreement between someone (other than the undercover officer) and Mr. McCoy to violate the law. *See, e.g., id.* Specifically, Mr. McCoy contends that he "was unable to obtain narcotics himself and was unable to further any conspiracy by virtue of the fact" that the drug supplier "refused to deal with him." At most, Mr. McCoy asserts, he "found a willing buyer for a willing seller." We disagree.

The jury was entitled to believe that Mr. McCoy told the undercover officer of the opportunity to buy some cocaine, that Mr. McCoy introduced the undercover officer to people who knew how to contact the drug supplier directly, that Mr. McCoy helped negotiate the price to be paid for a specific

quantity of the cocaine, that Mr. McCoy was willing to facilitate the transaction by confirming that quantity on his own scales, and that Mr. McCoy accompanied the undercover officer to all of the locations used in arranging the transaction. Although the testimony was that the drug supplier was unwilling to transfer the cocaine at Mr. McCoy's house, there was no testimony that the drug supplier was reluctant to sell to a buyer procured by Mr. McCoy or accompanied by him.

Various courts have held that similar evidence was sufficient to support a conviction for conspiracy to distribute drugs. *See, e.g., United States v. Garcia,* 45 F.3d 196, 198 (7th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2012, 131 L.Ed.2d 1011 (1995) (defendant acted as "middleman or broker" by introducing buyer to seller and "worked hard to move the deal along"); *United States v. Jean,* 25 F.3d 588, 596–97 (7th Cir.1994) (defendant negotiated price with seller and accompanied buyer to transaction); *United States v. Figueroa,* 976 F.2d 1446, 1459 (1st Cir.1992), *cert. denied,* 507 U.S. 943, 113 S.Ct. 1346, 122 L.Ed.2d 728 (1993) (defendant told buyer whom to call, "participated in the negotiations," and identified buyer to the seller); *United States v. Huff,* 959 F.2d 731, 738 (8th Cir.1992), *cert. denied,* 506 U.S. 855, 113 S.Ct. 162, 121 L.Ed.2d 110 (1992) (defendant negotiated price with buyer and accepted sample for testing); *United States v. Robles–Pantoja,* 887 F.2d 1250, 1254 (5th Cir. 1989) (defendant was "primary contact" with seller, "was present ... throughout the sale itself and helped to count the money"); *United States v. Crespo de Llano,* 838 F.2d 1006, 1019 (9th Cir.1987) (defendant negotiated with buyer, "was present at the time and place agreed upon for the consummation of the sale"); *United States v. Adams,* 799 F.2d 665, 672 (11th Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2464, 95 L.Ed.2d 873 (1987) (defendant accompanied buyer "on two separate occasions ... to broker the imported marijuana"); *United States v. Manzella,* 791 F.2d 1263, 1265–66 (7th Cir.1986) (defendant, "as broker[,] ... was as much a part of the conspiracy as a real estate broker is a part of the deal to sell a house"); *United States v. Brown,* 776 F.2d 397, 403 (2d Cir. 1985), *cert. denied,* 475 U.S. 1141, 106 S.Ct.

1793, 90 L.Ed.2d 339 (1986) (defendant "conferred his seal of approval" on buyer to seller); and *United States v. Rodriguez,* 765 F.2d 1546, 1552–53 (11th Cir.1985) (defendant's role was "as a middleman or broker" who put buyer into contact with seller).

"A defendant's participation in a conspiracy is proven by evidence tending to show that the defendant shared a common purpose or design with his alleged coconspirators.... Thus, if the activities of a defendant ... facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole," the necessary interdependence of the alleged conspirators' acts—reflecting the conspirators' coincidence of interests and a knowing coordination of efforts to produce a result in harmony with those interests—is present. *United States v. Horn,* 946 F.2d 738, 740–41 (10th Cir.1991). That interdependence is present in this case. We therefore hold that the evidence is sufficient to sustain Mr. McCoy's conviction.

## II.

Mr. McCoy also challenges the trial court's refusal to give three jury instructions that Mr. McCoy proffered—one stating that "preliminary discussions" are insufficient to establish an agreement to commit an illegal act, the second stating that a defendant's helping "a willing buyer [to] locate a willing seller" is insufficient to establish an agreement between the defendant and the seller, and the third stating that conspiracy requires agreement of at least two persons, "not including government agents, to commit in concert an unlawful act." We see no error in the trial court's actions.

■ The first and third instructions were unnecessary, since the trial court's instructions adequately defined the proof necessary to show an agreement and a conspiracy. The court properly rejected the second instruction, because, as we have gone to some pains to state, it is an incorrect statement of the law.

■ Mr. McCoy apparently also argues that the trial court should have given an instruction stating that a mere buyer-seller

relationship does not establish a conspiracy; his brief and oral argument included that point even though none of the rejected instructions covers that issue. Such an instruction would have been inapplicable, in any event, because there was no evidence that Mr. McCoy himself was either buying the cocaine from the seller or selling it to the undercover officer.

### III.

For the reasons stated, we affirm Mr. McCoy's conviction.