**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bootsy N. CLEGGETT, also known as Bootsey Cleggett, Defendant– Appellant.**

No. 98–3456.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1999.

Decided June 9, 1999.

Michael C. Carr (argued), Office of the United States Attorney, Benton, IL, for Plaintiff–Appellee.

Paul M. Storment, III (argued), Belleville, IL, for Defendant–Appellant.

Before BAUER, RIPPLE, and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

On April 23, 1998, a federal grand jury indicted Bootsy Cleggett ("Cleggett") on a single count of conspiracy to distribute crack cocaine ("crack"), in violation of 21 U.S.C. § 846. On July 2, Cleggett pled guilty to the charges in the indictment. At sentencing, the district court found that Cleggett was responsible for dealing ap-

proximately 1.7 kilograms of crack from April of 1996 to April of 1998. The district court determined that Cleggett's base offense level was 35 and his criminal history category was III. Accordingly, he was sentenced to 228 months of imprisonment, a five-year term of supervised release, and fines and special assessments. We affirm.

## I. BACKGROUND

In April of 1998, a drug task force working in the Centralia, Illinois area made several controlled buys of crack from a room in the Home Motel. The motel room was occupied by Cleggett and his brother, Gregory Cleggett ("Gregory"). On April 10, FBI agents obtained a search warrant and entered the motel room, where they found Cleggett and Gregory, along with several rocks of crack, multiple plastic baggies, and approximately $1,900 in cash. Both men were arrested.

Both Cleggett and Gregory made post-arrest statements to the agents. Cleggett provided the agents with the names of his suppliers, contacts, and customers, as well as information regarding the quantity of drugs that he bought and sold. He also informed the agents that he sold crack sporadically between 1988 and 1995 and that between April of 1996 and April of 1998, he sold approximately one ounce of crack per week on a routine basis. In Gregory's post-arrest statement, he corroborated many of the statements made by Cleggett, such as the names of contacts, suppliers, and customers and the quantity of crack that he and his brother sold.

At the sentencing hearing, Cleggett testified that a small portion of his post-arrest statement was unreliable because, at the time of his statement, he was under the influence of crack, heroin, and alcohol. Specifically, Cleggett recanted the portion of his statement in which he said that he had been selling crack for two years prior to his arrest. Cleggett then stated that he did not begin to sell crack until October of 1997 (whereas he previously stated that he began selling in April of 1996).

FBI agent Jerry Granderson conducted Cleggett's post-arrest interview and testified for the government at the sentencing hearing. Granderson testified that he was familiar with the physical signs of persons who were under the influence of crack, heroin, and alcohol, and that at the time of Cleggett's post-arrest statement, he did not appear to exhibit any of the signs of a . person under the influence of these substances. In fact, Granderson stated that Cleggett had no difficulty responding to his questions. Granderson also testified that he met with both Cleggett and Gregory subsequent to their arrests and that both men affirmed the accuracy of the facts in the post-arrest statements (except for one extraneous matter, which is not relevant to this appeal).

The district court found Cleggett's recantation of his post-arrest statement unconvincing and determined that, for sentencing purposes, Cleggett's statement that he sold approximately one ounce of crack per week from April of 1996 to April of 1998 (104 weeks), should be used in determining the length of time that Cleggett sold crack. Working from a period of 104 weeks, the district court subtracted 28 weeks upon finding that Cleggett was in prison from April of 1996 to October of 1996. The court subtracted another 12 weeks upon finding that Cleggett was in Arkansas for a three-month period. The court subtracted several additional months and arrived at a total of 60 weeks in which Cleggett had been dealing crack. The court multiplied 60 weeks by one ounce per week and concluded that Cleggett was responsible for 60 ounces of crack. The court then converted the ounces to kilograms and concluded that the amount of controlled substance sold by Cleggett, and thus attributable to his relevant conduct for sentencing purposes, was 1.7 kilograms of crack.

On appeal, Cleggett argues that the district court erred in calculating his relevant conduct for sentencing purposes because it incorrectly determined the amount of time

for which he sold crack. Cleggett also argues that the district court should have appointed a new attorney to represent him so that his original attorney could have testified at the sentencing hearing as to conversations between Cleggett and agent Granderson.

## II. DISCUSSION

### A. The District Court's Sentencing Determination

■ In reviewing a district court's sentencing determination, we review the findings of fact underlying the application of the sentencing guidelines for clear error. *United States v. Villarreal,* 977 F.2d 1077, 1080 (7th Cir.1992); *see also* 18 U.S.C. § 3742(e) (reviewing courts "shall accept the findings of fact of the district court unless they are clearly erroneous"). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. McEntire,* 153 F.3d 424, 431 (7th Cir.1998) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Congress has mandated this deferential standard of review and we do not second-guess the sentencing judge. *United States v. Garcia,* 66 F.3d 851, 856 (7th Cir.1995).

■ Cleggett first argues that the district court improperly relied upon his post-arrest statement in determining the length of time that Cleggett sold crack for sentencing purposes. Cleggett asserts that the court should have given weight to the statements he made at the sentencing hearing, in which he recanted the post-arrest statement and asserted that he had only been dealing crack since October of 1997.

■ We disagree with Cleggett's position. While a criminal defendant "has a due process right to be sentenced on the basis of accurate information," *United States v. Westbrook,* 986 F.2d 180, 182 (7th Cir.1993) (citations omitted), it is well established that the evidentiary standards that apply to sentencing are not as stringent as those applicable in a criminal trial. The criminal code provides that:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661. When sentencing a defendant, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Taylor,* 72 F.3d 533, 543 (7th Cir.1995) (quoting *United States v. Harty,* 930 F.2d 1257, 1268 (7th Cir.1991)). "So long as the information the sentencing judge considers has a sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence." *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir. 1993).

Here, Cleggett's post-arrest statement served as the primary evidence relied upon by the district court in determining the length of time Cleggett was dealing crack. Much of the information contained in Cleggett's statement was corroborated by Gregory's post-arrest statement. Cleggett attempted to change his position at sentencing by arguing that the crack, heroin, and alcohol he allegedly ingested shortly before his statement altered only his judgment to discern the amount of time that he dealt crack. However, agent Granderson testified that Cleggett exhibited no physical signs of drug use at the time of Cleggett's post-arrest statement. Considering this testimony, the district court opted to credit Cleggett's post-arrest statement and not his testimony at the sentencing hearing. This was not error.

■ After the district court chose to use April of 1996 to April of 1998 as the relevant period that Cleggett was selling crack, it reduced that time to reflect peri-

ods when Cleggett was either in prison or visiting Arkansas. Thus, we believe that the district court arrived at a responsible approximation of what occurred. *See Taylor*, 72 F.3d at 545 (holding that as long as "nebulous eyeballing" is avoided, "factual determinations under the Guidelines need not emulate the precision of Newtonian Physics."). Accordingly, we find that the facts relied upon by the district court in calculating the length of time Cleggett sold crack, bore a "sufficient indicia of reliability" to support its "probable accuracy." The district court did not commit clear error when it chose to adopt Cleggett's own post-arrest admissions rather than his self-serving recantation at the sentencing hearing because "if two permissible views exist, the fact-finder's choice between them cannot be clearly erroneous." *Taylor*, 72 F.3d at 546 (quoting *United States v. McDonald*, 22 F.3d 139, 144 (7th Cir.1994)).

## B. Cleggett's Request for New Counsel

■ Cleggett next contends that the district court should have appointed new counsel so that his original attorney could testify as to the discussions held between Cleggett and agent Granderson. The following interchange took place at sentencing between Cleggett's attorney and the district court:

[ATTORNEY]: I have a problem in that I was present at the time of the proffer and I think—I mean I may need to testify about some of the things.

THE COURT: You know better than that.

[ATTORNEY]: What I would do at this point in all honesty and in all candor, I would ask the court for a continuance at this point and have Mr. Cleggett appointed a new lawyer so that I may testify in the usual manner.

THE COURT: You may recall your client if you wish to address the proffer questions.

Sentencing Trans., Vol. 2 at p. 20.

■ Following this discussion, Cleggett's attorney neither explained why his request was admissible at trial, nor re-

quested an offer of proof as to what he would have testified to had the court granted his request. This Court has limited power to correct errors that were forfeited because they were not raised timely in the district court. *United States v. Olano*, 507 U.S. 725, 730, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. King*, 75 F.3d 1217, 1223 (7th Cir.1996). Before this Court can review a purported error that has been forfeited, Federal Rule of Criminal Procedure 52(b) provides that such an error must be "plain" and "affect substantial rights." *Olano*, 507 U.S. at 730, 113 S.Ct. 1770; *King*, 75 F.3d at 1223. Although we do not require that a formal offer of proof be made, the record must show the equivalent: the grounds for admissibility, what the proponent expects to prove by the excluded evidence, and the significance of the excluded testimony. *Id.* (citations omitted).

At sentencing, Cleggett made no offer of proof as to what the specific testimony would be if his attorney had been allowed to testify. Without such an offer of proof containing a description of the testimony that Cleggett's attorney would have offered, the district court's exercise of discretion to exclude the attorney's testimony cannot be deemed plain error. We have no additional record to review to determine whether the district court's refusal to allow the attorney to testify was "plain error" or whether "substantial rights" were affected, and therefore, the argument fails.

Affirmed.