# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2905

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| James Lamont Chapman, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted:  May 14, 2003

Filed:  September 29, 2003
_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury convicted James Chapman of conspiring to distribute and to possess with intent to distribute marijuana, *see* 21 U.S.C. §§ 841(a)(1), 846, and of possessing with intent to distribute marijuana, *see* 21 U.S.C. § 841(a)(1).  The district court[1] sentenced Mr. Chapman to 33 months imprisonment on each count to be served

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

concurrently.  Mr. Chapman appeals his convictions and sentence.  We affirm his convictions and sentence, but we remand for correction of a clerical error in the judgment and commitment order.


## I.

This case arises out of Mr. Chapman's participation in a drug distribution conspiracy with his brother, Craig Chapman (Craig), and another individual, Francisco Barron.  During a routine traffic stop, a Colorado state trooper discovered that Mr. Barron's trunk contained four duffel bags full of marijuana.  Mr. Barron agreed to cooperate in a controlled delivery, and agents of the Drug Enforcement Agency (DEA) accompanied him to meet his buyer in Minnesota, where the focus of the investigation shifted to Mr. Chapman and his brother.  Mr. Chapman, Craig, and Mr. Barron were indicted together.  At the time that Mr. Chapman and his brother were jointly tried, Mr. Barron was a fugitive.  The jury convicted both Mr. Chapman and Craig of the charges against them.


## II.

At trial, the district court, over the objections of both of the Chapman brothers, permitted DEA Special Agent Kyle Scheer to testify extensively about statements that Mr. Barron made to him in the course of assisting with the controlled delivery. Mr. Chapman asserts that Mr. Barron's statements to Agent Scheer were inadmissible hearsay, and that their admission violated his rights under the confrontation clause of the sixth amendment. We agree with both of these contentions, but we believe that the error was harmless beyond a reasonable doubt.

Agent Scheer testified that Mr. Barron told him that he was transporting marijuana to Minnesota for an individual named "Arturo" in Arizona, and that he had done so at least twice before.  He also testified that Mr. Barron described the "regular routine" for the delivery of marijuana to Minnesota, as follows:  Upon Arturo's request, Mr. Barron would obtain a rental car, which Arturo would load with

approximately 120 to 150 pounds of marijuana. Mr. Barron would drive the loaded car directly to the Minneapolis area and register at a hotel in Burnsville, usually at the Super 8; he would then contact the person to whom the marijuana was to be delivered and make arrangements for the delivery. Agent Scheer in fact testified that Mr. Barron told him the name of the person to whom he was delivering marijuana on this trip, and that it was the same person whom he had met on previous trips. Agent Sheer further testified that Mr. Barron gave him two business cards during the interview, cards that Agent Scheer used to locate and verify the person to whom the marijuana was to be delivered.

## A.

We consider Mr. Chapman's evidentiary objection first. At trial, the government successfully argued that Mr. Barron's out-of-court statements should be admitted (through Agent Scheer) for the truth of the matters asserted because the statements were against Mr. Barron's penal interest. The "statement-against -interest" exception to the hearsay rule provides, in relevant part, that if a witness is "unavailable" (as the rule defines that term), the witness's statement may be admitted if the statement "at the time of its making ... so far tended to subject the [witness] to ... criminal liability ... that a reasonable person in the [witness's] position would not have made the statement unless believing it to be true." Fed. R. Evid. 804(b)(3).

Since Mr. Barron was a fugitive from justice at the time of trial, we certainly agree that he was unavailable as that term is defined in the rule, *see* Fed. R. Evid. 804(a)(5), but we do not agree that Mr. Barron's statements implicating a third party fall within the relevant hearsay exception. Our careful examination of the circumstances surrounding Mr. Barron's making of the statements implicating a third party fails to convince us that a reasonable person in Mr. Barron's position would not have made the statements unless he believed them to be true. Fed. R. Evid. 804(b)(3); *Williamson v. United States*, 512 U.S. 594, 603-04 (1994). " '[A] statement admitting guilt and implicating another person, made while in custody, may well be motivated

by a desire to curry favor with the authorities and hence fail to qualify as against interest' " so that it cannot be admitted against the third party that it implicates. *United States v. Hazelett*, 32 F.3d 1313, 1317 (8th Cir. 1994) (quoting Fed. R. Evid. 804(b)(3), advisory committee's notes exception (3)); *see Williamson*, 512 U.S. at 600.

We find it particularly telling that Mr. Barron made the statements implicating a third party in the course of assisting the authorities with a controlled delivery designed to ensnare the repeat Minnesota buyer, some twenty-four hours into his custody and after his arrest in Colorado. Mr. Barron had already been caught red-handed with 191 pounds of marijuana that were discovered during a consensual search of his car; he had little, if anything, to lose by confessing and implicating another person. *See, e.g., Williamson*, 512 U.S. at 604 (separate opinion of O'Connor, J., in which Scalia, J., joined); *Hazelett*, 32 F.3d at 1314-15, 1318; *United States v. Mendoza*, 85 F.3d 1347, 1352 (8th Cir. 1996). It is no secret that "[s]mall fish in a big conspiracy often get shorter sentences than people who are running the whole show ... especially if the small fish are willing to help the authorities catch the big ones." *Williamson*, 512 U.S. at 604 (separate opinion of O'Connor, J., in which Scalia, J., joined). Mr. Barron, by casting himself as a mere mule and serving up the repeat buyer, could reasonably assume that he would be minimizing his criminal liability. *See Hazelett*, 32 F.3d at 1314-15, 1318. Mr. Barron's statements implicating a third party simply do not satisfy the requirements of the statement-against-interest hearsay exception, and it was error to admit them.

We think, moreover, that the government's suggestion on appeal that Mr. Barron's statements could have been admitted for the non-hearsay purpose of defending the propriety of its investigation cannot rehabilitate their admission. The government identifies several places in the pretrial and trial proceedings where the defendants challenged the integrity of the investigation and the bias of the government's witnesses. We note, however, that all but three of the challenges

-4-

identified by the government were made outside the hearing of the jury. We further observe that at the time that Agent Scheer testified about Mr. Barron's statements, the only remotely similar challenge before the jury was Craig's attorney's vague comment during his opening statement that the jurors should "look for bias" on the part of witnesses. Challenges made outside the hearing of the jury, or after Mr. Barron's statements were admitted, obviously cannot have supplied the basis for admitting his statements. *Cf. United States v. Blake*, 107 F.3d 651, 653 (8th Cir. 1997); *United States v. Davis*, 154 F.3d 772, 778 (8th Cir. 1998).

It is true that during a pretrial hearing addressing motions in limine, the government alluded to the possibility of offering statements by Mr. Barron or a Colorado investigator who was not available for trial for the non-hearsay purpose of explaining how the investigation moved from Colorado to Minnesota. *Cf. United States v. King*, 36 F.3d 728, 732 (8th Cir. 1994); *United States v. Running Horse*, 175 F.3d 635, 637-38 (8th Cir. 1999); *United States v. Azure*, 845 F.2d 1503, 1507 (8th Cir. 1988). When a statement is offered for a limited purpose, however, the district court will instruct the jury on its limited use. *See Running Horse*, 175 F.3d at 638; *King*, 36 F.3d at 732; *Azure*, 845 F.2d at 1507; *Blake*, 107 F.3d at 653. Though it is normally incumbent upon defense counsel to request such an instruction, here defense counsel could not do so because Mr. Barron's statements were not offered or admitted for a limited purpose; they were offered, and the jury was permitted to consider them, for the truth of the matter asserted.

B.

We turn now to Mr. Chapman's assertion that his constitutional rights were violated by the admission of Mr. Barron's hearsay testimony. Relying on *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, the government argues that the admission of Mr. Barron's hearsay testimony did not violate Mr. Chapman's rights under the confrontation clause because Mr. Barron's statements were redacted to eliminate any direct reference to the identity of Mr. Barron's repeat buyer. *See*

*Bruton*, 391 U.S. 123; *Richardson v. Marsh*, 481 U.S. 200 (1987); *Gray v. Maryland*, 523 U.S. 185 (1998); *United States v. Logan*, 210 F.3d 820 (8th Cir. 2000), *cert. denied*, 531 U.S. 1053 (2000). We think that the government's argument misses the mark.

The *Bruton* line of cases applies when the government seeks to admit a non-testifying declarant's out-of-court statement against the same declarant who made the statement. These cases address the adequacy of confrontation clause protections when the non-testifying declarant has also implicated a co-defendant, and the declarant and co-defendant are jointly tried. In those situations the government may introduce the statement against the declarant without violating the co-defendant's confrontation clause rights if the statement is sanitized to eliminate all direct references to the co-defendant and if the jury is instructed to consider the statement only against the declarant. *See Richardson*, 481 U.S. at 211; *Gray*, 523 U.S. at 190-91; *Logan*, 210 F.3d at 821. In other words, if Mr. Barron and Mr. Chapman had been tried jointly, the government could have admitted Mr. Barron's statements *against Mr. Barron* without violating Mr. Chapman's confrontation clause rights assuming Mr. Barron's statements were properly redacted and a cautionary instruction was given.

It is an entirely different matter, however, when, as here, the government seeks to admit a non-testifying declarant's statements against a third party. In that situation, the third party's confrontation clause rights are protected, and the statements are admissible, only if the statements bear adequate "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980). "[T]he veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when [the statements] 'fall[] within a firmly rooted hearsay exception' or ... contain[] 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *United*

*States v. Lilly*, 527 U.S. 116, 124 (1999) (plurality opinion) (quoting *Roberts*, 448 U.S. at 66); *United States v. Papajohn*, 212 F.3d 1112, 1119 (8th Cir. 2000).

Four justices of the Supreme Court have opined that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Lilly*, 527 U.S. at 134 (plurality opinion); *see Papajohn*, 212 F.3d at 1118-19. The same justices also held in *Lilly* that the accomplice's statements did not contain the particularized guarantees of trustworthiness necessary to satisfy the concerns of the confrontation clause. *Lilly*, 527 U.S. at 137-39 (plurality opinion); *see also Papajohn*, 212 F.3d at 1119-20. Because the facts of this case are like those in *Lilly* in all significant and material respects, and since Mr. Justice Scalia concurred in the judgment in *Lilly* on the ground that the introduction of the statements there was a "paradigmatic Confrontation Clause violation," *id.* at 143 (Scalia, J., concurring), we believe that the result in *Lilly* bars the admission of Mr. Barron's statements against Mr. Chapman on confrontation-clause grounds.

## C.

Having determined that the admission of Mr. Barron's statements violated both the rules of evidence and the confrontation clause, we are obliged to consider whether the error was harmless. "Hearsay rule violations which do not affect constitutional rights are subject to Fed. R. Crim. P. 52(a) harmless error analysis, while confrontation right violations are subject to the stricter harmless error test found in *Chapman v. California*, 386 U.S. 18, 24 (1967), which requires that the error be harmless beyond a reasonable doubt, *id.*" *United States v. Copley*, 938 F.2d 107, 110 (8th Cir. 1991) (citation omitted). Applying the stricter standard established by *Chapman*, we find that the admission of Mr. Barron's statements, though unfortunate, was harmless beyond a reasonable doubt.

As the Supreme Court has instructed, we have carefully considered "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error," *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993), and we are convinced that Mr. Chapman's conviction cannot be attributed to Mr. Barron's statements. We believe, rather, that when Mr. Barron's statements are viewed in the context of the other evidence that was admitted, the only possible inference that the jury could have drawn was that the "buyer" Mr. Barron spoke of was Mr. Chapman's brother, Craig.

As we have already indicated, Mr. Barron told Agent Scheer that he had a "regular routine" for the delivery of the marijuana to the Minnesota buyer. Specifically, upon arriving in Minneapolis, Mr. Barron would register at a hotel and contact the buyer. Mr. Barron also revealed that he would be contacting the same buyer on this trip as on previous trips. Mr. Barron then gave Agent Scheer two business cards: his own card and Craig's card. Based on this information, and with Mr. Barron's assistance, investigators set up a controlled delivery at a motel where Mr. Barron had stayed on previous drug trips.

Once ensconced in the motel, the investigators supervised and recorded three telephone calls between Mr. Barron and Craig. These tapes, played for the jury at trial, reveal that Mr. Barron and Craig conversed with great familiarity. Craig is also heard on the tape telling Mr. Barron that Arturo (the seller of the drugs) called "four or five" times to check on Mr. Barron's whereabouts and to tell Craig when Mr. Barron should be arriving. Ultimately it was Craig who met Mr. Barron at the motel. Additionally, at Craig's home, investigators later recovered scraps of paper; written on them was the name "Arturo" with an Arizona phone number and the name "Rosa" (Mr. Barron's wife's name) with a Mexican phone number.

We note, moreover, that Mr. Chapman's convictions can very easily be attributed entirely to evidence unrelated to Mr. Barron's statements to Agent Scheer. *See Copley*, 938 F.2d at 110. For example, in the recorded telephone conversations

between Craig and Mr. Barron, after Mr. Barron inquires whether Craig has the money, Craig says "Ah, I believe so. I'll check with James. . . . If not, we're so close it don't make no difference." When Mr. Barron later asks Craig, "Why don't you come and get this shit?" Craig replies, "Yeah, let me call my bro."

In fact, before Craig drove to Mr. Barron's motel, investigators observed him stop at a house where Mr. Chapman was staying. After leaving the house and before driving to Mr. Barron's motel, Craig was observed placing a box in the trunk of his car, which was later found to contain a substantial amount of cash. At this house, investigators also found Mr. Chapman's W-2 employment tax form and a cellular telephone with the name "James" on the back. In the garage of the house investigators found a cooler containing at least fourteen bags of marijuana and numerous plastic bags with marijuana residue, along with Mr. Chapman's pit bull terrier. Three of Mr. Chapman's fingerprints were recovered from two of the plastic bags.

Our careful review of the evidence admitted at trial convinces us that the jury could only have understood Mr. Barron's statements about a "buyer" as referring to Craig. This can come as no surprise since Mr. Barron's unredacted statements in fact name Craig as the buyer, and do not mention Mr. Chapman's name at all. We also find significantly incriminating the evidence that was properly admitted against Mr. Chapman. We therefore hold that the error in the admission of Mr. Barron's testimony was harmless beyond a reasonable doubt.

### III.

We consider briefly some other issues that Mr. Chapman raises.

Mr. Chapman faults the district court for failing to instruct the jury that Mr. Barron ceased to be a co-conspirator once he began cooperating with the government. It is, of course, familiar law that "there can be no indictable conspiracy

involving only the defendant and [a] government agent[or] informer[]." *United States v. Nelson*, 165 F.3d 1180, 1184 (8th Cir. 1999). But Mr. Chapman did not proffer an instruction on this issue below, and we see no plain error here. The district court is not required *sua sponte* to instruct the jury that a drug conspiracy requires the agreement of at least two persons, excluding government agents; all that is required is that the district court's instructions adequately define the proof necessary to make out a conspiracy. *United States v. McCoy*, 86 F.3d 139, 141 (8th Cir. 1996). The district court in this case correctly instructed the jury that a conspiracy requires an agreement between at least two persons to commit an illegal act, and there is more than ample evidence in the record from which it can be inferred that Mr. Chapman conspired with at least one person who was definitely not a government agent, namely, Craig Chapman.

We also reject Mr. Chapman's assertion that the government failed to prove a proper chain of custody with regard to the marijuana removed from Mr. Barron's car in Colorado and with regard to the marijuana found in the cooler in the garage of the house in Minnesota. Mr. Chapman argues that the evidence was inadequate to ensure that items analyzed by the chemist were the same as those seized. Mr. Chapman did not, however, object to the admission of this evidence at trial, and so we again review his challenge for plain error.

The Colorado trooper who seized the marijuana bundles from Mr. Barron's car identified the bundles presented at trial (including the four marijuana bundles that were later used in the DEA-supervised delivery) as the same as those he seized, by examining the wrapping paper and the markings on the bundles: He described the packages as wrapped in "tan flour type shelf paper wrapping with cellophane" and "wood tunnel type wrapping" marked either with a "T" or with "black weight markings." He turned these packages over to the Colorado DEA task force. A Minnesota DEA task force member later testified that he obtained a sample from each of the four marijuana bundles used in the controlled delivery and transferred them to

the chemist; this same deputy also testified that he transferred the marijuana recovered from the cooler in the garage to the chemist. The chemist testified that she received these items from the deputy.

"A district court may admit physical evidence if the court believes a reasonable probability exists that the evidence has not been changed or altered. In making this determination, absent a showing of bad faith, ill will, or proof of tampering, the court operates under a presumption of integrity for the physical evidence." *United States v. Cannon*, 88 F.3d 1495, 1503 (8th Cir. 1996) (citation omitted). Mr. Chapman fails to indicate how this evidence has been changed in any important respect and offers nothing specific to rebut the presumption of integrity. *See id.*; *United States v. Pressley*, 978 F.2d 1026, 1028-29 (8th Cir. 1992). Although there were clearly other steps in the chain as the evidence moved from Colorado to Minnesota and from its discovery to court, based on the testimony above we find no plain error in the district court's admission of the evidence.

Mr. Chapman next argues that the evidence was insufficient to sustain his convictions. On appeal from a conviction, we must "view the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences." *United States v. Peterson*, 223 F.3d 756, 759 (8th Cir. 2000), *cert. denied*, 531 U.S. 1175 (2001). We have already rehearsed the evidence against Mr. Chapman, and we need not repeat it here. We do address, however, Mr. Chapman's argument that because most of the marijuana found in the cooler (alongside the bags that contained Mr. Chapman's fingerprints and marijuana residue) was "shake" (stems, seeds, and particles) with little retail value, it cannot support the distribution element of the possession with intent to distribute charge.

Viewing the evidence in the light most favorable to the verdict, we believe that the jury could have reasonably assumed that the presence of the large quantity of shake, discovered alongside the bags that the government's drug trafficking expert

-11-

testified are the type used to package marijuana for distribution, demonstrated Mr. Chapman's intent to distribute the rest of the marijuana in the cooler. Accordingly, we reject Mr. Chapman's challenge to the sufficiency of the evidence on both the conspiracy to distribute marijuana and the possession with intent to distribute marijuana counts.

We have examined Mr. Chapman's other assignments of error and find them meritless.

IV.

Finally, we consider Mr. Chapman's assertion that the judgment and commitment order contains a clerical error referring to 21 U.S.C. § 841(b)(1)(C) as the applicable penalty provision instead of 21 U.S.C. § 841(b)(1)(D). The government agrees with Mr. Chapman's assertion. This clerical error now having been called to the attention of the district court, we remand the case to the district court for correction of its judgment. *See* Fed. R. Crim. P. 36.

V.

For the reasons indicated, we affirm Mr. Chapman's convictions and sentence, but we remand so that the district court may correct a clerical error in the judgment and commitment order.

_____