# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 03-2406

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DIRK D. JONES,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:02 cr 93-02—**Rudy Lozano**, *Judge.*

————————

ARGUED DECEMBER 17, 2003—DECIDED JUNE 9, 2004

————————

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Dirk Jones was charged in
two counts of a three-count indictment arising from the
purchase and attempted resale of a firearm. Count One
charged him with a conspiracy having two objects: to make
a false statement to a federally licensed firearms dealer,
and to transfer a firearm to a resident of another state.
18 U.S.C. §§ 371, 922(a)(6), 922(a)(5). Count Three charged
him with possession of a firearm by a felon. *Id.* § 922(g)(1).
A jury found him guilty of both counts, and the district
court sentenced him consecutively to 60 months' impri-
sonment on Count One and three months' imprisonment on
Count Three. At the close of the government's case

and again at the close of all evidence, Jones had moved for acquittal on both counts under Fed. R. Crim. P. 29. Jones now appeals the denial of that motion only as to Count One, arguing that the government did not present sufficient evidence to support the conspiracy conviction. Because the government failed to meet its burden, we reverse Jones's conviction on Count One.

## I.  BACKGROUND

Early on the morning of June 20, 2001, Dennis Rock entered the Westforth Sports Shop in Gary, Indiana, with an unidentified individual and made a $200 down payment on a Norinco SKS semi-automatic assault rifle. Rock was a frequent customer at Westforth's. Between September 2000 and June 2001, Rock had purchased at least ten firearms from Westforth's, and agents from the Bureau of Alcohol, Tobacco, and Firearms (ATF) had asked the store to alert them if Rock made any more purchases. After Rock placed the down payment on the rifle and had left the store, the sales clerk called the ATF to report the transaction. ATF agents arrived at the store and hid in a back room. The government made no effort at trial to establish the identity of Rock's companion, but nevertheless argued in closing that Jones was the second man in the store.

Rock returned to Westforth's later that morning, and Jones admits that this time he was with Rock. Store surveillance cameras recorded the entire time the two men were at Westforth's. Rock and Jones spent at least half an hour in the store because the ATF had instructed the sales clerk to delay completing the transaction until additional agents could arrive. During this time, the store surveillance video showed that Rock filled out a federally required Form 4473. The video also showed that during this period Jones handled the SKS rifle briefly, spoke with Rock and the sales clerk, smoked a cigarette, looked at the display cases, and

held a pistol from one of the cases for a few moments. There was no testimony about what Jones said while in the store. Once the sale was completed, the sales clerk placed the rifle in a box and Jones carried the box to Rock's car and placed it in the trunk.

The two men then drove away, and ATF agents followed. Rock drove around Gary with Jones in the car for approximately ninety minutes, making stops at a convenience store, an apartment building, and a restaurant. Rock then entered Interstate 90 and drove into Chicago, stopping in front of a Chicago Housing Authority building at 2920 South State Street. While Rock remained in the car, Jones got out and walked into the building. Approximately a minute later Rock exited his car and opened the trunk. The ATF agents testified that they believed Rock was trying to remove the rifle from the trunk, so they approached the car and arrested him. Chicago police officers also arrived at this point. ATF Agent Mickey French testified that approximately three to five minutes after Rock had parked his car, Jones and seven or eight other people exited the building. The agents approached and detained Jones, but did not question the others. Chicago police officers took Jones to a police station for questioning, but later released him and allowed him to leave in Rock's vehicle. Seventeen months later, in November 2002, Jones was indicted along with Rock. But Rock became a fugitive, so Jones was tried alone. Rock was subsequently located, and he pleaded guilty to Count One in August 2003.

The government and the defense offer widely different theories about Jones's actions on that day. The government's theory of the case was that Rock had an ongoing relationship with a man in Chicago named "Vino" or "Vince". Agent Kevin O'Malley read into evidence a redacted written confession Rock had given to the police on the day he was arrested, in which Rock describes his dealings with Vino and says that he was purchasing the SKS rifle for Vino.

Agent Cynthia Carroll testified that the ATF had been investigating Rock because he had bought eleven firearms from Westforth's. Agent Carroll testified that the ATF suspected Rock of making "straw purchases"—meaning that Rock (who had a gun permit and could legally buy firearms) would purchase a gun from a store and then resell it in Chicago, possibly with Vino's assistance. The government presented no evidence that Jones was involved in any other transactions, but argued in its closing that Jones was helping Rock to carry out one of these straw purchases on June 20, and that Jones entered the housing project to find a buyer for the rifle. The version of Rock's confession read to the jury made no mention of Jones.

The defense argued instead that Jones had nothing to do with the purchase or sale of the rifle. Jones testified that he is a drug addict and that on the morning in question he wanted to go to Chicago to purchase heroin. Indeed, Jones has two previous convictions for drug offenses, and at trial he rolled up his sleeve to show the jury what are apparently extensive needle marks on his arm. He testified that he was standing on a street corner in Gary where addicts regularly go to look for rides into Chicago to buy drugs, when Rock—who was a casual acquaintance—drove up and offered to take him. According to Jones, Rock said he needed to make a stop before heading to Chicago and then went to Westforth's. Jones said he was experiencing withdrawal and wanted to get to Chicago quickly, so he went into the store to try to keep Rock from wasting time—an explanation the government disputed in its closing. When they arrived at 2920 South State Street, according to Jones, he went inside and bought heroin that he snorted while still inside. Jones also testified that this building was the location where he usually bought his heroin.

## II.  ANALYSIS

### A.  Standard of Review

Jones argues that the district court erred in denying his motions for acquittal on Count One. We review the denial of those motions de novo. *United States v. Quilling*, 261 F.3d 707, 712 (7th Cir. 2001). We recognize that we may not reweigh the evidence or the credibility of witnesses, and must view the evidence in the light most favorable to the government and draw all reasonable inferences in its favor. *United States v. Senffner*, 280 F.3d 755, 760 (7th Cir. 2002). The question we must ask is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003).

### B.  Sufficiency of the Evidence

In order to establish a conspiracy under § 371, the government must prove: (1) an agreement to commit an illegal act; (2) the defendant's knowing and intentional participation in the agreement; and (3) an overt act committed in furtherance of the agreement. *United States v. Gee*, 226 F.3d 885, 893 (7th Cir. 2000). The government may rely on circumstantial evidence to establish both the existence of a conspiracy and the defendant's involvement. *United States v. Irorere*, 228 F.3d 816, 823 (7th Cir. 2000). But although a jury may infer facts from other facts derived by inference, " 'each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation.' " *United States v. Peters*, 277 F.3d 963, 967 (7th Cir. 2002) (quoting *Piaskowski v. Bett*, 256 F.3d 687, 693 (7th Cir. 2001)); *accord United States v. Cruz*, 285 F.3d 692, 699 (8th Cir. 2002); *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000); *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994).

In its brief, the government lists a sequence of events it says the jury could have found without drawing any inferences. The events are: Jones talked with Rock on the morning of June 20, 2001, and entered his car; Rock entered Westforth's with another man and made a $200 deposit on an SKS rifle; Jones and Rock later entered Westforth's together; Rock paid for the rifle and filled out the necessary paperwork, and Jones placed the rifle in Rock's trunk; three hours later Rock and Jones arrived at 2920 South State Street, and Jones entered the building; approximately a minute later Rock opened his trunk and started to remove the rifle; Rock was detained; and Jones exited the building by a side door with seven or eight men. The government says this sequence "amply supports" the jury's finding that Jones participated in the conspiracy.

The government overstates the strength of its evidence. This sequence of events establishes at most that Jones was present while Rock engaged in what Rock admitted was an illegal straw purchase of a firearm. But "mere presence" while a crime is being committed is insufficient to show that a defendant acted to further a conspiracy. *Piaskowski*, 256 F.3d at 692; *United States v. Navarrete*, 125 F.3d 559, 562 (7th Cir. 1997); *United States v. Larkins*, 83 F.3d 162, 167 (7th Cir. 1996); *United States v. Knox*, 68 F.3d 990, 995 (7th Cir. 1995). Even if Jones knew of Rock's plan to resell the rifle, his knowledge or approval of the illegal scheme is insufficient to sustain a conviction. *Knox*, 68 F.3d at 995; *United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir. 1990).

The indictment charged that Jones conspired with Rock to make a false statement to a firearms dealer because Rock stated on the Form 4473 that he was purchasing the gun for himself when in reality he was purchasing it for Vino. Jones would not have known that Rock falsified the ATF form unless he knew of Rock's plan at that point. But the government's evidence at trial that Jones was connected with—or

even aware of—Vino's and Rock's scheme to resell firearms in Chicago is nonexistent. There is no evidentiary support that shows either an agreement between Rock and Jones, or Jones's knowing participation in an agreement between Rock and Vino. Rock, not Jones, filled out the form and gave the money to the clerk. Moreover, Agent O'Malley even testified that he had no probable cause to make an arrest at the time Rock and Jones left Westforth's because Rock had a valid gun permit. The government's evidence does not even establish that Jones knew that Rock committed a crime at Westforth's, much less that he participated in it.

Likewise, the fact that Jones knew Rock bought the gun does not prove that he knew that Rock planned to sell it to a nonresident of Indiana or that he played any role in the scheme. The ATF agents could only speculate as to Jones's purpose for entering 2920 South State Street, because once they arrested Rock and Jones, they made no attempt to locate any potential buyer of the rifle or to identify any of the people who left the building with Jones. Rock did not testify at Jones's trial, so he could not establish the purpose for which Jones entered the building. Jones claimed he entered the building to purchase heroin from his regular drug supplier, and the government presented no evidence to the contrary.

To further support its case, the government lists several inferences it says the jury reasonably could have drawn from the evidence. First, it says the jury could have inferred that Rock enlisted Jones to help him sell the rifle in Chicago and that Jones agreed to participate to get money for drugs. Although surely the jury could have inferred both the existence of an agreement and Jones's knowing participation had there been evidence from which to reasonably draw those inferences, *see Irorere*, 228 F.3d at 838, there was not in this case even circumstantial evidence to support either inference. The government never explained at trial

how Jones was to profit from this transaction if he was to profit at all; speculation is all that the government offers now.

Adding to its speculation, the government also says that the jury could have inferred that Jones told Rock that they could sell the gun to one of his heroin suppliers at 2920 South State Street. But the only basis for suspecting that Jones told Rock he knew of a buyer for the gun is a single sentence in Rock's post-arrest confession: "My friend Duke, came with me to pickup the SKS, and that he (Duke) knew of someone in the city of Chicago that would purchase the SKS from me for a profit." The government argues that "Duke" is an alias for Dirk Jones. But the jury never saw this sentence because the parties agreed before trial that it was inadmissible. The government next argues that the jury could have inferred that Jones was the man who went into Westforth's with Rock when Rock made his down payment, that the two men left the store to finalize their plan, and that they returned to the store so Rock could complete the purchase. But these points all assume that Jones was the unidentified man who entered Westforth's with Rock the first time. This would be an important fact for the government because it would undermine Jones's assertion that he first met Rock on the street corner and would also suggest that he played a role in the transaction. But Jones claims he wasn't there, and the sales clerk was unable to identify Jones as Rock's original companion (even though he did identify him as Rock's companion the second time Rock was in the store). Furthermore, Westforth's has *nine* video surveillance cameras that record every angle both inside and outside the store. At trial the government played a tape of Jones's and Rock's entire visit to the store when they left with the SKS rifle. It seems that the government would also have presented a videotape of the earlier visit to the store if Jones was present, but it did not do so. As it was, the government offered *no* evidence that the man with Rock the first time was Jones.

Finally, the government says the jury could have inferred that Jones knew Rock was going to lie on the Form 4473 about being the actual purchaser, and that pursuant to their "agreement" Jones entered 2920 South State Street to look for a buyer. These arguments again assume that Jones was aware of a conspiracy and was a knowing participant in it. The government might have obtained support for the latter point if the ATF had further investigated after detaining Jones. But the ATF did not question any of the seven or eight people who left the building at the same time as Jones and made no attempt to locate the assumed buyer of the weapon. All the government brought to trial was its speculation about the stop at the housing project.

In short, the government's evidence establishes at most that Jones was present while Rock committed two federal firearms crimes: falsifying the ATF form and driving to Chicago for the purpose of selling the SKS rifle to an out-of-state resident. The government tries to infer from his presence that Jones both knew of and knowingly participated in a conspiracy to commit those offenses. But the government's case relies on speculation with scant evidentiary support. Even though a jury may infer facts, "each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation." *Piaskowski*, 256 F.3d at 693. The government's evidence in this case required the jury to do just that. The government's case certainly casts suspicion upon Jones. But a "strong suspicion that someone is involved in criminal activity is no substitute for proof of guilt beyond a reasonable doubt." *Id.* at 692. Even given the deferential standard of appellate review that applies here, we cannot say that the government met its burden.

## C. Rock's Out-of-Court Statement

One more matter before we conclude. Although it does not impact our decision, we are troubled that the redacted

version of Rock's confession was admitted into evidence. Even assuming that the confession qualifies as a hearsay exception as a statement against Rock's penal interest, *see* Fed. R. Evid. 804(b)(3), its admission at a trial where only Jones was before the jury implicates the Confrontation Clause of the Sixth Amendment, and we asked the parties to file supplemental briefs on this issue.

Jones had filed a pretrial motion in limine requesting that any mention of him in the confession be redacted; citing *Bruton v. United States*, 391 U.S. 123 (1968), the government agreed to do so. But the Eighth Circuit recently recognized that the long line of cases beginning with *Bruton* does not go far enough to address a situation like this in which the confession of a fugitive defendant is offered against only his alleged accomplice. *United States v. Chapman*, 345 F.3d 630, 634-35 (8th Cir. 2003). The court in *Chapman* held that admitting the confession of a fugitive co-defendant violated the remaining defendant's rights under the Confrontation Clause (though it found the error to be harmless). *Chapman*, 345 F.3d at 634-35. Neither party has even acknowledged *Chapman* in their post-argument submissions, so we do not have their views—particularly the government's—about why we should not follow the Eighth Circuit's reasoning.

The *Bruton* line of cases deals with situations in which the confession of one defendant is offered at a joint trial where the statement is redacted to omit any explicit reference to the co-defendant and the jury is instructed to consider the statement only against the *declarant. Id.* Here, Rock, the declarant, was not present at the trial, so his confession was obviously intended to be used *against Jones.* Until recently, cases interpreting the Confrontation Clause required that a co-conspirator's statement incriminating the defendant contain " 'particularized guarantees of trustworthiness' such that cross-examination would be of marginal utility in determining the truthfulness of the statements."

*United States v. Ochoa*, 229 F.3d 631, 637 (7th Cir. 2000) (quoting *Lilly v. Virginia*, 527 U.S. 116, 134 & n.5, 136 (1999)); *see also Ohio v. Roberts*, 448 U.S. 56, 66 (1980). As discussed below, we have doubts about the reliability of Rock's confession, and we question whether it would satisfy this standard. But since the parties filed their supplemental briefs, the Supreme Court issued its opinion in *Crawford v. Washington*, ___ U.S. ___, 124 S. Ct. 1354 (March 8, 2004). *Crawford* holds that "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 1374. *Crawford* curtails the inquiry into a statement's reliability by holding that "the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* Jones never had an opportunity to cross-examine Rock and thus, under *Crawford*, no part of Rock's confession should have been allowed into evidence.

Furthermore, we are also concerned that the district court relied on Rock's confession—including the sentence saying that Jones knew of a buyer for the rifle—when it determined that Jones committed perjury at trial and therefore deserved an adjustment for obstruction of justice. *See* U.S.S.G. § 3C1.1. Although a judge may consider otherwise inadmissible evidence in calculating a sentence, any evidence upon which the judge relies must have "sufficient indicia of reliability." *United States v. Cleggett*, 179 F.3d 1051, 1054 (7th Cir. 1999) (quoting *United States v. Cedano-Rojas*, 999 F.2d 1175, 1180 (7th Cir. 1993)). But Rock's confession implicated both Jones and Vino in his gun selling scheme, which could be considered an effort by Rock to shift blame to others, thus reducing his own criminal liability and raising questions about the veracity of the statement. *See*, *e.g.*, *Williamson v. United States*, 512 U.S. 594, 604 (1994). Moreover, a "very strong presumption of unreliability" attaches to statements that are: (1) given with govern-

ment involvement; (2) describe past events; and (3) have not been subjected to adversarial testing. *Ochoa*, 229 F.3d at 637 (citing *Lilly*, 527 U.S. at 137). Rock's confession contains all three of these elements, making it presumptively unreliable. Since our disposition of the conspiracy count will result in a remand for resentencing on the § 922(g)(1) count, *see United States v. Martenson*, 178 F.3d 457, 462 (7th Cir. 1999), the district court should conduct a close examination of the circumstances surrounding Rock's confession before considering it when imposing a new sentence.

## III.  CONCLUSION

Jones's conviction on Count One is REVERSED; his sentence on Count Three is VACATED, and this case is REMANDED to the district court for resentencing on Count Three.

A true Copy:

  Teste:

        _____
        *Clerk of the United States Court of*
          *Appeals for the Seventh Circuit*